ORIGINAL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

WILLIAM G. TOURET, THOMAS A. BENNETT, WILLIAM G. BLACK, EILEEN F. ROSENBERG-BLACK, ANTOINETTE BREED, ALLYN COPP, RONALD A. DWIGHT, PAMELA HEXT DWIGHT, G. DALE DULGARIAN, as he is Trustee for KSD TRUST, VIRGINIA G. RIGGS, MATTHEW L. SHILLING, YVONNE G. SHILLING, and COLLEGE HILL NEIGHBORHOOD ASSOCIATION,

Plaintiffs,

v.

NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; DEPARTMENT OF ENERGY; and BROWN UNIVERSITY,

Defendants.

C.A. No. CA 04 198 T

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. In this action the plaintiffs seek declaratory, injunctive and other equitable relief with respect to the location, construction, and operation of a new Life Sciences Building (the "facility") at Brown University, Providence, Rhode Island. The plaintiffs allege that the construction of the facility has commenced in violation of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 et seq., and the implementing regulations of the Council on Environmental Quality (40 CFR Parts 1500–1508), the National Aeronautics and Space Administration (14 CFR Part 1216, Subpart 1216.3), and the Department of Energy (10 CFR Part 1021).

**PARTIES**

2. The following plaintiffs join in this action:

a. Plaintiff William G. Touret, who resides at 9 Olive Street, Providence, Rhode Island, lives within one block of the proposed building.

b. Plaintiff Thomas A. Bennett, who resides at 8 Olive Street, Providence, Rhode Island, lives within one block of the proposed building.

c. Plaintiffs William G. Black and Eileen F. Rosenberg-Black, who reside at 12 Olive Street, Providence, Rhode Island, live within one block of the proposed building.

d. Plaintiff Antoinette Breed, who resides at 7 Cushing Street, Providence, Rhode Island, lives within three blocks of the proposed building.

e. Plaintiff Allyn Copp, who resides at 12 Keene Street, Providence, Rhode Island, lives within four blocks of the proposed building.

f. Plaintiffs Ronald A. Dwight and Pamela Hext Dwight, who reside at 155 Benefit Street, Providence, Rhode Island, live within four blocks of the proposed building.

g. G. Dale Dulgarian is a plaintiff as he is Trustee of KSD Trust (the "trust"), the owner of real estate located at 252-268 Thayer Street in Providence, Rhode Island, which is located on the same block as the proposed building.

h. Plaintiff Virginia G. Riggs, who resides at 6 Olive Street, Providence, Rhode Island, lives within one block of the proposed building.

i. Plaintiffs Matthew L. Shilling and Yvonne G. Shilling, who reside at 94 Angell Street, Providence, RI, live within one block of the proposed building.

j. Plaintiff College Hill Neighborhood Association ("CHNA") is a nonprofit organization which represents the residents of the historic College Hill neighborhood of Providence. CHNA has approximately 180 households as paid members who live in the area surrounding the proposed building. The mailing address of CHNA is 104 Bowen Street, Providence, RI 02906.

3. Defendant National Aeronautics and Space Administration ("NASA") is an agency of the United States, having its headquarters office at 300 E St. SW, Washington, D.C.

4. Defendant Department of Energy ("DOE") is a cabinet agency of the United States, having its headquarters at 1000 Independence Ave., SW, Washington, D.C.

5. Defendant Brown University ("Brown" or the "University") is a non-profit educational corporation organized under the laws of the State of Rhode Island. The main campus of Brown is located in the College Hill residential section of the City of Providence.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Count One of this action pursuant to 5 U.S.C. §§ 701-706 (Administrative Procedure Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1346(a)(2) (United States as defendant); and 28 U.S.C. § 2201 (declaratory judgment). This Court has pendent jurisdiction over Count Two of this action. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## FACTUAL STATEMENT

### The Brown University Project

7. Brown has recently begun construction of a new Life Sciences Building (the "project") located adjacent to the existing Biomedical Building. The project site, which is located in the center of the College Hill residential neighborhood, is bordered by Brown, Meeting, Thayer, and Olive Streets and is immediately south of the University's Pembroke Campus.

8. The building has been proposed, and is being constructed, to facilitate Brown's scientific research in the areas of microbiology, genetics, genomics, and biochemistry. The project – which will modernize and expand laboratory and research space at Brown – has been designed to encourage scientific collaboration among faculty, staff and students and consolidate research activities which are now being done at other locations. Once the building is completed, Brown will relocate its Department of Molecular Biology, Cell Biology and Biochemistry, its Department of Neuroscience, its Department of Cognitive and Linguistics Sciences; and its Brain Science Program from other facilities to the new building. The building will also contain new space for interdisciplinary initiatives in genetics and genomics. It is currently expected that about

53 existing faculty members will be relocated to the new building and that, over the next several years, as many as 11 new faculty members will be located in the new building.

9. The building will have approximately 186,000 gross square feet of space with five levels above grade and one level below grade. The building has been designed to contain (a) approximately 51 laboratory modules, which would increase by fifty percent Brown's overall biomedical research space, (b) 69 faculty offices, (c) two administrative suites, three large seminar or conference rooms, and 15 small conference rooms, and (d) research suites for magnetic resonance imaging units and electron microscopy.

10. The specific future research programs and activities to be conducted in the building, which are not precisely known at this time, will be defined in the future as the needs for research are determined and funding (including funding from NASA, DOE, and other federal agencies) is obtained. It is currently anticipated by Brown, however, that the laboratories and equipment in the new building will be used for research in the fields of genetics, cell biology, biochemistry, brain chemistry, and human perception and behavior. Brown estimates that the building, together with its recently-purchased Doran-Speidel Building located at 70 Ship Street in the Providence Jewelry District which is now being renovated, will attract an additional $23.4 million in annual federal research support.

11. The research and related activities to be conducted in the building will include the storage and use of biological and radioactive materials and laboratory chemicals such as acids, bases, solvent, and various other chemicals. These activities will result in the generation of hazardous, radioactive, medical, and biological wastes; air

emissions from boilers, an emergency generator, cooling towers, research fume hoods, and through building windows, doors, and other openings; and wastewater discharges from the accidental or incidental disposal of chemicals and other wastes down sink drains.

12. The University has estimated that the building's construction cost will be approximately $95 million. Construction will take approximately 30 months, requiring demolition of three historic properties, utility relocation, demolition and excavation of rock and sill, and construction of the building itself. Under the present construction schedule it is anticipated that the building will be ready for occupancy in or about April 2006.

13. The College Hill neighborhood is a densely-populated residential section of Providence containing a mixture of administrative, academic, residential, and athletic facilities of both Brown and the Rhode Island School of Design ("RISD"); private residences including many historic buildings; and retail and commercial buildings. An estimated 8,000-9,000 Brown and RISD undergraduate and graduate students live in dormitories, other residential facilities, and privately-owned housing which surround the project site. Approximately 20,000 persons, other than Brown or RISD students, live in the College Hill and immediately adjacent neighborhoods. Three Providence public schools, two Providence private schools, and at least four nursing homes are located in the vicinity of Brown and the project site.

**<u>The Federal Environmental Review Process</u>**

14. The Congress has appropriated $6.25 million for the construction of the building, which has been, or will be, funded through grants to Brown from NASA (a total

of $5,250,000) and DOE (a total of $1,000,000).

15. The partial funding of the building by NASA and DOE is "a major Federal action significantly affecting the quality of the human environment" within the meaning of NEPA § 102(2)(C), 42 U.S.C. § 4332(2)(C).

16. On or about June 2, 2003 NASA, as the lead agency, and DOE, as a cooperating agency, published a draft Environmental Assessment ("EA"), along with a draft Finding of No Significant Impact ("FONSI"), which purported to examine the potential environmental impacts of the proposed building. After receipt of comments from 35 individuals, organizations and agencies (including comments submitted by and in consultation with the plaintiffs), the final EA and FONSI (dated July 2003) were published by NASA and DOE on or about August 8, 2003. The EA and FONSI concluded that the construction and operation of the proposed building would not individually or cumulatively have a significant effect on the human environment and, therefore, publication of an environmental impact statement ("EIS") is not required.

**PLAINTIFFS' STANDING**

17. Each of the above-listed plaintiffs will be injured by the construction, use and operation of the building. In particular, the research activities to be conducted in the building will require the usage and storage of laboratory chemicals, radioactive materials, and biological materials which will cause the release of wastes and air emissions to the surrounding neighborhood. The wastes which will be generated from operations of the laboratories and released into the surrounding environment include volatile and toxic chemicals which are hazardous to human health and the environment. The use and operation of the building will, and/or has the serious potential to, increase the risk of

adverse health impacts to students, faculty, and residents in the surrounding area and the College Hill neighborhood.

18. The procedures designed in NEPA, and its implementing regulations, are designed in part to protect the plaintiffs against the approval by NASA and DOE of a project which may cause damage to the environment and human health unless and until NASA and DOE have completed a proper evaluation of the potential impacts of, alternatives to, and mitigation measures regarding the proposed project.

19. The plaintiffs have been, are being, and will be aggrieved by the failures of NASA and DOE to carry out their duties under NEPA and its implementing regulations, to evaluate the cumulative impacts and indirect effects of the project.

20. The individual plaintiffs, the trust, and the members of CHNA live and work in the vicinity of the building site and use the College Hill area for outdoor activities, shopping and other commercial activities, and passive recreation.

21. The health, environmental interests, economic interests, and recreational opportunities of the plaintiffs are being and will be adversely affected by the actions of NASA and DOE which are the subject of this complaint.

22. The relief sought by the plaintiffs in this action will restore or protect the plaintiffs' rights by ensuring that the health and environmental impacts of, alternatives to, and mitigation measures regarding the project are properly evaluated before the project is constructed.

**CLAIM FOR RELIEF**

**COUNT ONE: NATIONAL ENVIRONMENTAL POLICY ACT**

23. The allegations of paragraphs 1 to 22 of this complaint are repeated.

24. NASA and DOE are each an "agency" within the meaning of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

25. The decisions of NASA and DOE to issue a FONSI for the project, and not to prepare an environmental impact statement ("EIS"), are arbitrary and capricious and were made in violation of NEPA, the CEQ regulations, and the relevant NEPA regulations of NASA and DOE for the following reasons, among others:.

a. NASA and DOE did not have adequate data and information upon which to make a proper determination that the project is unlikely to have significant health and/or environmental effects so that publication of an EIS was not required. For example, the conclusion that emissions from existing and new laboratory fume hoods and related sources would be unlikely to have adverse health or air quality effects was reached without having sufficient information about (1) the types, quantities, and anticipated usages of chemicals and other substances which are now in use in existing Brown laboratories and would be used in the new laboratories; (2) the specific dilution criteria incorporated into the building's design including the precise specifications for the building's fume hoods and exhaust stacks; (c) site-specific meteorological conditions; (d) and a health risk assessment.

b. NASA and DOE failed to take a "hard look" at the environmental consequences of their approval of the project and did not consider the relevant factors.

c. Substantial questions remain unaddressed whether the construction, operation and use of the building may cause significant adverse health and environmental impacts. For example, on information and belief the plaintiffs allege that NASA and DOE did not have sufficient data and information upon which a reasoned evaluation could be made of the potential future quantity and types of hazardous air pollutants which would be emitted from the increased research activities and operations of the building and the effect of these emissions on human health.

d. NASA and DOE did not make a reasoned finding that the project's environmental and health effects are not significant.

e The effects of the project on the human environment are highly controversial and involve highly uncertain, unique, and unknown risks which NASA and DOE failed to consider.

26. The plaintiffs are suffering, and have suffered, legal wrong and/or are adversely affected or aggrieved within the meaning of 5 U.S.C. § 702 because of unlawful final agency actions of NASA and DOE.

27. The plaintiffs are entitled to judicial review of the final agency actions which are the subject of this complaint.

28. The actions of NASA and DOE which are the subject of this complaint are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; have been taken beyond the applicable statutory authority and requirements; were made

without observance of the procedures required by law; and to the extent that the facts in this action may be subject to a trial de novo, are unwarranted by the relevant facts, all as provided in 5 U.S.C. §§ 706(2)(A), (C), (D), (E), and (F).

29. An actual controversy exists within the jurisdiction of this Court regarding the rights and other legal relations of the plaintiffs with respect to the failures of NASA and DOE to carry out their duties to comply with the above-referenced provisions of law, as to which declaratory judgment is appropriate pursuant to 28 U.S.C. §§ 2201-2202.

**PRAYERS FOR RELIEF**

WHEREFORE, the plaintiffs pray that this Court enter the following relief:

1. That this Court enter a declaratory judgment in favor of the plaintiffs with regard to the actions of NASA and DOE.

2. That this Court find and enter judgment that the actions of NASA and DOE are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the applicable laws and regulations relied on by the plaintiffs.

3. That this Court enter such preliminary and permanent injunctive relief as is appropriate (a) to restrain and enjoin the defendants from their unlawful conduct and actions which are being taken in violation of law, (b) to require NASA and DOE to prepare an EIS for the project; and (c) to enjoin Brown University, pending compliance with the requirements of NEPA, from further construction of the building.

4. That this Court award the plaintiffs attorney's fees and costs to the extent allowed by law.

5. That this Court grant and award the plaintiffs such other and additional relief as they are entitled to under this complaint.

Plaintiffs William G. Touret, Thomas A. Bennett, William G. Black, Eileen F. Rosenberg-Black, Antoinette Breed, Allyn Copp, Ronald A. Dwight, Pamela Hext Dwight, G. Dale Dulgarian, as he is Trustee for KSD Trust, Virginia G. Riggs, Matthew L. Shilling, Yvonne G. Shilling, and College Hill Neighborhood Association,

By their attorneys,

J. WILLIAM W. HARSCH/Bar No. 3688
170 Westminster Street, Suite 800
Providence , RI 02903
Tel. 401-454-4466
Fax 401-351-3914

PETER L. KOFF
Massachusetts BBO #276520
Engel & Schultz, P.C.
125 High Street, Suite 2601
Boston, MA 02110
Tel. 617-951-9980
Fax 617-951-0048

Dated: May 21, 2004