ORIGINAL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| WILLIAM G. TOURET, et al.,<br>Plaintiffs,<br>v.<br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.,<br>Defendants. | CIVIL ACTION NO. 04-198T |

**PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiffs William G. Touret et al. move this Court for leave to supplement the certified Administrative Record, as filed with this Court on July 27, 2004, by the inclusion of the following two declarations which are being submitted as attachments to this motion:

1. Declaration of S. David Graber P.E. (15 pages); and.
2. Declaration of Eileen E. Rosenberg-Black (2 pages).

The reasons why this Court should allow supplementation of the Administrative Record are set forth in the accompanying memorandum.

The plaintiffs also notify this Court at this time that a significant number of additional documents which were part of the administrative record of defendants National Aeronautics and Space Administration ("NASA") and United States Department of Energy ("DOE"), collectively referred to as the "federal defendants," have not yet been certified by NASA and/or DOE and added to the present Administrative Record.[1] These additional documents, which were before NASA and/or DOE prior to their decisions which are the subject of this action, fall into four major groups of documents: (a) at least five documents which are attachments to documents already in the Administrative Record, but which attachments were not included; (b) four documents which the

[1]Although the plaintiffs have been orally advised that the Administrative Record as filed represents the "joint" administrative record of both NASA and DOE, the plaintiffs have not seen any written confirmation that this record has been certified by a responsible officer of DOE.

9

plaintiffs obtained in July 2004 from DOE pursuant to a Freedom of Information Act ("FOIA") request dated June 9, 2004; (c) an unknown number of additional documents which NASA was to have provided to the plaintiffs by the end of July 2004 in response to a separate FOIA request dated June 6, 2004;[2] and (d) numerous documents relating to the environmental review of Brown University's proposed Life Sciences Building which the plaintiffs obtained in the public files available at the Rhode Island Historical Preservation and Heritage Commission offices in Providence, RI.[3]

The plaintiffs have requested the federal defendants to supplement their own Administrative Record by the inclusion of these four additional groups of documents. Should the federal defendants not agree to do so, the plaintiffs reserve the right to file a supplement to this motion which would seek leave of this Court for the plaintiffs to submit these documents as a further supplement to the federal defendants Administrative Record.

Plaintiffs William G. Touret et al.,

By their attorneys,

WILLIAM W. HARSCH/Bar No. 3688
170 Westminster Street, Suite 800
Providence , RI 02903
Tel. 401-454-4466
Fax 401-351-3914

PETER L. KOFF
Massachusetts BBO #276520
Engel & Schultz, P.C.
125 High Street, Suite 2601
Boston, MA 02110
Tel. 617-951-9980
Fax 617-951-0048

Dated: August 10, 2004

---

[2]On July 15, 2004 counsel for the plaintiffs was advised by the responsible NASA attorney that the additional NASA documents which NASA has agreed to release pursuant to the FOIA request would be provided several days after the administrative record was filed with this Court.

[3]These additional documents include various applications for federal assistance; an environmental analysis form completed by Brown; draft pages of the environmental assessment; and approximately 24 letter and e-mail comments about the proposed facility which were not included in AR 123.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of August 2004, I caused a copy of the foregoing to be sent/hand-delivered, by postage prepaid mail to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
Chief, Civil Division
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Joseph Avanzato, Esq.
Kristen W. Sherman, Esa.
ADLER POLLOCK & SHEEHAN, P.C.
2300 Financial Plaza
Providence, RI 02903-2443

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Box 1913
Brown University
Providence, RI 02912-1913

J. William W. Harsch

ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILLIAM G. TOURET, et al., Plaintiffs, v. NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al., Defendants. | CIVIL ACTION NO. 04-198T |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiffs William G. Touret et al. submit this memorandum in support of their Motion to Supplement the Administrative Record in this case by the inclusion of the two declarations attached to the motion.[1]

The federal defendants' Administrative Record should be supplemented so that the plaintiffs can demonstrate that the two federal agency defendants, the National Aeronautics and Space Administration ("NASA") and the United States Department of Energy ("DOE"), hereafter collectively the "federal defendants," failed to consider significant environmental impact and human health issues related to the operations of the proposed Life Sciences Building (the "facility") at Brown University ("Brown") when the federal defendants decided that preparation of an Environmental Impact Statement ("EIS") pursuant to Section 102(2)(C) of the National Environmental Policy Act ("NEPA") of 1969, 42 U.S.C. § 4332(2)(C), is not required.

**FACTS**

**A. Summary Of This Action.**

In this action plaintiffs seek to set aside as arbitrary and capricious the decisions of NASA and DOE that preparation of an EIS is not required because, in the opinion of the federal defendants,

[1]As also stated in the motion, however, the plaintiffs are reserving their right to file a further motion to supplement the administrative record with four groups of additional documents inadvertently or improperly left out of the federal defendants' administrative record, should the federal defendants not agree to add these records on their own initiative.

the construction and use of the new facility at Brown "would not individually or cumulatively have a significant affect [sic] on the quality of the human environment." Finding of No Significant Impact ("FONSI") at 3, August 8, 2003 [AR 116 at 801].[2]

Normally in an action like the present one which seeks to set aside a federal agency's decision as "arbitrary and capricious" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), the matter is decided solely on the basis of the administrative record which was before the agency at the time its decision was made. See Sierra Club v. Marsh, 976 F.2d 763, 772 (1st Cir. 1992). In accordance with 5 U.S.C. § 706 and this Court's Scheduling Order entered June 28, 2004, the federal defendants on July 27, 2004 filed a joint Administrative Record certified by Lizbeth R. Montgomery, Safety and Environmental Division, NASA's Goddard Space Flight Center.[3]

**B. The Present Administrative Record.**

The Administrative Record in this case consists of 123 separately-indexed documents and groups of documents.[4] Included in the record are various drafts [AR 82, 87] of the Draft Environmental Assessment ("EA") [AR 98][5] and comments [AR 91, 94, 95] regarding the Draft FONSI [AR 97], with comments back and forth between NASA, DOE, Brown, and Brown's consultant, Batelle Memorial Institute ("Batelle"),[6] as these documents were being prepared, edited,

---

[2]Plaintiffs' references to documents in the Administrative Record ("AR") filed on July 27, 2004 refer to the specific document numbers identified in the index to the AR and, in some cases, references are also made to the specific pagination provided by NASA and DOE.

[3]Although the plaintiffs have been informally advised that the Administrative Record as filed represents the "joint" administrative record of both NASA and DOE, the plaintiffs have not seen any written confirmation that this record has been certified by a responsible officer of DOE.

[4]Document 123 consists of 39 separate "public comments" on the Draft EA and Draft FONSI, including comments from several plaintiffs [AR 123 at 889 to 1084].

[5]An environmental assessment is prepared by a federal agency, prior to its approval of a project, to assist the agency in determining whether the project's potential environmental impacts are significant enough to be more thoroughly analyzed in an EIS. See 40 C.F.R. § 1508.9.

[6]At the urging of the federal defendants, Brown retained the services of an attorney who was experienced with NEPA issues, Lucinda Low Swartz of Batelle, to assist in the preparation of the environmental assessment [AR 86 at 456; AR 98 at 586].

and finalized prior to their release to the public; the Final EA [AR 113] and Final FONSI [AR 116];[7] numerous letters regarding the federal/state review of the historic impacts of the project; approximately 22 newspaper articles about the proposed facility; other related environmental review documents prepared for NASA and DOE by Brown; and miscellaneous legislative and grant documents concerning federal funding for the proposed Life Sciences Building.

**C. The Federal Defendants' Decision Not To Prepare An EIS.**

The federal environmental review process, triggered by Brown's award of federal funding for construction of the facility, began in February 2002 [AR 41] approximately one year after Brown had initiated the historic preservation consultation process with the Rhode Island Historic Preservation & Heritage Commission [AR12]. In the spring of 2002 NASA and DOE determined that their award of partial funding (approximately $6.25 million) of the costs of construction of the project required compliance with NEPA and that preparation of an environmental assessment was appropriate because the proposed Life Sciences Building "could adversely impact certain historic structures in downtown Providence, Rhode Island." AR 88 at 500. Based largely on information about the project supplied by Brown [AR 40 at 84-230; AR 70 at 48-55] and draft environmental assessment documents prepared by Brown [AR 82 at 399-427] and by Brown and its consultant [AR 87 at 461-499], NASA and DOE reviewed Brown's drafts and consulted with Brown and Batelle about the scope and content of the EA to be released to the public [AR 83, 84, 86, 89-95]. In early June of 2003 NASA and DOE circulated for public comment the Draft EA (dated May 2003) [AR 98], which purported to evaluate the construction impacts and impacts of operation of the proposed facility; and a Draft FONSI (dated May 2003) [AR 97], which concluded that an EIS would not be required. After receipt of numerous comments from state and local agencies and the public, NASA and DOE released their Final EA (dated July 2003) [AR 113] and Final FONSI (dated August 7,

---

[7]The Administrative Record includes numerous documents and comments written by NASA, DOE, Brown, and Batelle which show the evolution of the Draft EA and Draft FONSI. Significantly, however, the record does not contain any documents showing how the Final EA and Final FONSI were prepared.

2003 [AR 116].

The federal defendants concluded that it was not necessary to prepare an EIS because the Life Sciences Building would not cause any significant adverse environmental or human health impacts. The Final EA states that "[t]he primary environmental impact of the proposed Life Sciences Building would be to historic resources." EA at 1 [AR 113 at 720]. In addition, the EA states that during construction "there would be a small volume of air pollutant emissions, temporary increases in noise, and temporary disruptions in traffic and parking." EA at 2 [AR 113 at 720]. The EA also concludes that operation of the new facility "would result in a small increase in the use of hazardous materials and in the generation of hazardous, radioactive, and biological waste...;" and that operation of the building "would also result in a small volume of air emissions" from the building's "boilers, an emergency generator, cooling towers, and exhaust from research fume hoods." Id. The EA further concludes as follows:

> None of these impacts are expected to result in significant impacts, either individually or cumulatively when considered together with other past, present, and reasonably foreseeable future actions in the area of Brown University or Providence, Rhode Island.

EA at 2 [AR 113 at 720]. As a result of these findings, NASA and DOE determined that "the proposed Life Sciences Building will not impose significant environmental impacts and that an [EIS] is therefore not required." EA at 2 [AR 113 at 720].

Based upon the findings and conclusions in the Final EA, the FONSI determined as follows:

> Based on the analysis in the EA, NASA and DOE have determined that the construction and operation of the proposed Life Sciences Building at Brown University in Providence, Rhode Island, would not individually or cumulatively have a significant affect on the quality of the human environment. Therefore, the proposed action does not constitute a major federal action within the meaning of NEPA, and an environmental impact statement is not required.

FONSI at 3 [AR 116 at 801].

## ARGUMENT

### A. Courts Routinely Allow Supplementation Of The Administrative Record In NEPA And Other Technical And Scientific Cases.

NEPA litigation presents one of the most frequently-cited exceptions to the rule which requires that judicial review of federal agency action under the APA is based on, and confined to, the agency's record upon which its decision was based. The NEPA exception has been repeatedly recognized by the First Circuit and other Circuits, as well as in a long line of decisions from the District of Massachusetts.[8] The rationale for the NEPA exception is that a plaintiff should be afforded the opportunity to proffer evidence not in the record about the issues which were not properly considered by the agency where, on the surface of the administrative record itself, it may not be clear whether that the agency had adequately reviewed significant adverse impacts of the proposed project. Airport Impact Relief, Inc. v. Wykle, 45 F. Supp. 2d 89, 98-99 (D. Mass. 1999), aff'd, 192 F.3d 197, 201 (1st Cir. 1999), citing, Strahan v. Linnon, 966 F. Supp. 111, 114 (D. Mass. 1997).

A related exception also comes into play in both NEPA litigation and other cases which require review of complex technical information. In those cases courts may allow the agency record to be supplemented since

> the omission of technical scientific information is often not obvious from the record itself, and a court may therefore need a plaintiff's aid in calling such omission to its attention.

Sierra Club v. Peterson, 185 F.3d 349, 55 (5th Cir. 1999), vacated on other grounds, 228 F.3d 559 (5th Cir. 2000), petition for rehearing denied, 2000 U.S. LEXIS 31850. See also Strahan v. Linnon, 966 F. Supp. at 114.

In Airport Impact Relief, the most recent application of the NEPA exception in the District of Massachusetts, the plaintiffs alleged that as a consequence of changes made in the plans for the East Boston portion of the Central Artery/Third Harbor Tunnel Project, the Federal Highway

---

[8] Plaintiffs believe that this is an issue of first impression in the District of Rhode Island.

Administration was required to prepare a supplemental EIS. The court (Keeton, J.) allowed the administrative record of the agency to be supplemented by those portions of an affidavit which addressed in detail the environmental impacts of the changes to the project that FHWA should have considered but did not. 45 F. Supp. at 98.

In Strahan v. Linnon, 967 F. Supp. 581, 609-610, 629 (D. Mass. 1995), the plaintiff claimed that certain activities of the United States Coast Guard adversely impacted endangered marine animals (including the Northern Right whale) in violation of the agency's duties under various federal environmental statutes, and in particular that the Coast Guard's failure to prepare an environmental assessment for its operation of vessels and documentation and inspection activities violated NEPA. In ruling on motions for summary judgment, the court (Woodlock, J.) carefully reviewed fifteen different deposition excerpts and affidavits proposed for supplementation of the agency's record and concluded that certain of these materials should be considered for several related purposes: to show data the agency should have considered, but did not, 966 F. Supp. at 115; to aid the court's understanding of technical aspects of the agency activities, id. at 115, 117; and to show factors the agency should have considered, but did not. Id. at 117.

In City of Waltham v. United States Postal Service, 786 F. Supp. 105, 112 (D. Mass. 1992), aff'd, 11 F.3d 235 (1st Cir. 1993), the plaintiff challenged under NEPA the proposed construction of a regional mail facility by arguing, as do the plaintiffs in the present case, that the environmental assessment and FONSI were substantively inadequate. The court (Young, J.) allowed consideration of five affidavits, except those parts which offered legal conclusions, for the purpose of demonstrating that the agency had failed to consider certain environmental impacts of the proposed site and had not considered alternative sites. Id. at 120.

The NEPA and related technical issues exceptions are also well-recognized in other Circuits. See National Audubon Society v. Hoffman, 132 F.3d 7, 14-15 (2d Cir. 1997), where the Second Circuit, in affirming the District Court's conclusion that an environmental assessment regarding a logging project in Vermont's Green Mountain National Forest was inadequate, reviewed a number

of other NEPA cases where matters outside the administrative record were considered and explained the importance of considering extra-record evidence in NEPA cases:

> Deviation from this "record rule" occurs with more frequency in the review of agency NEPA decisions than in the review of other agency decisions [citation omitted]. This occurs because NEPA imposes a duty on federal agencies to compile a comprehensive analysis of the potential environmental impacts of its proposed action, and review of whether the agency's analysis has satisfied this duty often requires a court to look at evidence outside the administrative record. To limit the judicial inquiry regarding the completeness of the agency record to that record would, in some circumstances, make judicial review meaningless and eviscerate the very purposes of NEPA. The omission of technical scientific information is often not obvious from the record itself, and a court may therefore need a plaintiff's aid in calling such omissions to its attention.

See also National Audubon Society v. U.S. Forest Service, 46 F.3d 1437, 1447 (9th Cir. 1993), where the Ninth Circuit concluded that "an allegation that an EIS has failed to mention a serious environmental consequence may be sufficient to permit the introduction of new evidence outside of the administrative record....," quoting, Animal Defense Council v. Hodel, 840 F.2d 1432, 1437 (9th Cir. 1988), amended, 867 F.2d 1244 (9th Cir. 1989).

### B. The Declarations Offered By Plaintiffs Meet The Standards For Supplementing The Administrative Record.

It may not be completely apparent from the face of the Administrative Record, without some additional technical analysis and information, that the federal defendants failed to consider in any meaningful manner how the emissions of toxic air pollutants from the proposed facility could have adverse human health impacts on students and nearby residents who are exposed to these emissions.

Accordingly, the Graber declaration is offered to permit the plaintiffs to demonstrate – when the issues in this case are briefed for summary judgment – why the plaintiffs are entitled to judgment and to assist this Court's evaluation of the merits, given that engineering and related technical and scientific expertise is particularly helpful properly to evaluate the adequacy of the NASA/DOE analysis.[9]

---

[9]It would also be fair and equitable to permit the plaintiffs to provide this Court with some specific analysis, amounting to only 14 pages, that the proposed facility may have significant adverse human health impacts, given that NASA, DOE, and Brown expended substantial resources to prove – unconvincingly – just the opposite.

Similarly, the Rosenberg-Black declaration is being offered to show that the human health impacts on residents living in the vicinity of the proposed facility is not simply an academic question, given her existing compromised immune system. This is an issue discussed in the Graber declaration, para. 10 at 5; and para. 23 at 12.

## CONCLUSION

Accordingly, the plaintiffs request that this Court allow the Administrative Record to be supplemented so that the plaintiffs can have a full opportunity to explain to the Court what significant environmental impact and health issues were not properly considered by the federal defendants.

Plaintiffs William G. Touret et al.,

By their attorneys,

WILLIAM W. HARSCH/Bar No. 3688
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. 401-454-4466
Fax 401-351-3914

PETER L. KOFF
Massachusetts BBO #276520
Engel & Schultz, P.C.
125 High Street, Suite 2601
Boston, MA 02110
Tel. 617-951-9980
Fax 617-951-0048

Dated: August 10, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of August 2004, I caused a copy of the foregoing to be sent/hand-delivered, by postage prepaid mail to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
Chief, Civil Division
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Joseph Avanzato, Esq.
Kristen W. Sherman, Esa.
ADLER POLLOCK & SHEEHAN, P.C.
2300 Financial Plaza
Providence, RI 02903-2443

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Box 1913
Brown University
Providence, RI 02912-1913

J. William W. Harsch