UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WILLIAM G. TOURET, et al., | : | |
| Plaintiffs | : | |
| v. | : | C.A. NO. 04-198T |
| NASA, et al., | : | |
| Defendants | : | |

**FEDERAL DEFENDANTS' OBJECTION TO MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

The Federal defendants object to plaintiffs' Motion to Supplement the Administrative Record with the declarations of Eileen Rosenberg-Black and S. David Graber for the reasons set forth in the accompanying memorandum of law.

The Federal defendants do not object to providing a certification for the administrative record from the Department of Energy. A copy of the certification is attached to this Objection.

As to plaintiffs request that the agencies supplement the administrative record with documents they assert should have been included in the administrative record filed with the Court, the Federal defendants assert the following: First, some of these records are not sufficiently identified and cannot be located. Second, the documents referenced either were not relied upon by the agencies in rendering their decision, or were not received prior to close of the public comment period (with one possible exception) and consequently, are not appropriately included in the record. The Federal defendants object to any further motion to supplement the

12

record, but in the meantime, will endeavor to work with plaintiffs to determine if an agreement can be reached regarding these additional documents.

Respectfully Submitted,

ROBERT CLARK CORRENTE
United States Attorney

ROBIN E. FEDER, #3415
Assistant United States Attorney
Chief, Civil Division
Fleet Center
50 Kennedy Plaza, 8th floor
Providence, RI 02903
(401) 709-5000

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Federal Defendants' Objection to Motion to Supplement the Administrative Record, was served by first class mail, postage prepaid, this 31st day of August, 2004 by mailing same to:

J. William W. Harsch, Esq.
170 Westminster Street, Suite 800
Providence, RI 02903

Peter L. Koff, Esq.
Engel & Schultz, P.C.
124 High Street, Suite 2601
Boston, MA 2601

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
2300 Financial Plaza
Providence, RI 02903-2443

Beverly E. Ledbetter, Esq.
General Counsel
Office of the General Counsel
Brown University
110 South Main Street
Providence, RI

UNITED STATES DISTRICT COUR.
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WILLIAM G. TOURET, THOMAS A. BENNET; WILLIAM G. BLACK, EILEEN F. ROSENBERG-BLACK, ANTOINETTE BREED, ALLYN COPP, RONALD A. DWIGHT, PAMELA HEXT DWIGHT, G. DALE DULBARIAN, as he is Trustee for KSD TRUST, VIRGINIA G. RIGGS, MATTHEW L. SHILLING, YVONNE G. SHILLING, and COLLEGE HILL NEIGHBORHOOD ASSOCIATION, | ) | |
| Plaintiffs, | ) | C.A. No. 04 198T |
| v. | ) | |
| NATIONAL AERONATUTICS AND SPACE ADMINISTRATION; DEPARTMENT OF ENERGY; And BROWN UNIVERSITY, | ) | |
| Defendants. | ) | |

CERTIFICATION OF ADMINISTRATIVE RECORD

I hereby certify that I am the custodian of the U.S. Department of Energy (DOE) portion of the administrative record for the Brown University Grant Environmental Assessment, and that, to the best of my knowledge, the documents identified below that are part of the joint administrative record filed with the court by NASA constitute a true and complete copy of the DOE's administrative record in this matter.

Carson L. Nealy
Manager, Office of Technical Services
U.S. Department of Energy Chicago Office

Documents Nos. 52, 55, 58, 64-73, 75-76, 79, 81-84, 86-89, 92-94, 97-101, 104, 107-108, 111-116, 123

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

WILLIAM G. TOURET, et al., Plaintiffs :
:
v. : C.A. No. 04-198T
:
NASA, et al., Defendants :

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION TO SUPPLEMENT**

Judicial review of plaintiffs' claims is limited to the administrative record relied upon by the defendant Federal agencies (NASA and DOE) making the challenged decision. While there are a few exceptions to this general principal, none apply here. Plaintiffs' wholesale attempt to circumvent the administrative record relied upon by the Agencies and to create their own record *de novo* in this Court is improper and should be rejected.

As discussed below, the two declarations offered by plaintiffs suffer a multitude of legal deficiencies including: failure to establish that the declarations fall within any of the limited exceptions to record review; failure to establish adequate expertise, in violation of Rule 702 of the Federal Rules of Evidence; and failure to demonstrate relevance under Rule 402 of the Federal Rules of Evidence.

**I. BACKGROUND**

This is an action for injunctive and declaratory relief under the National Environmental Policy Act (NEPA), regarding the construction of a new Life Sciences Building (LSB) at Brown University, in Providence, Rhode Island (Brown), against Brown, NASA and DOE. The construction project is partially funded by Congress through grants from NASA and DOE. The action challenges the sufficiency of an Environmental Assessment (EA) and the resultant Finding of No Significant Impact (FONSI).

On June 23, 2003, Brown began construction of the proposed LSB, located at Meeting and Olive Streets on the Brown campus in the College Hill neighborhood of Providence. The site for the LSB is adjacent to an existing biology building, meeting the University's need to provide a

synergistic approach to education and research between the two buildings. Brown's educational philosophy with regard to medical and life sciences calls for students in these disciplines to follow a continuous course of classes, laboratory training and research in the same building and working with the same professors, beginning as an entering freshman and continuing through to the completion of medical or graduate degrees. Because of this, Brown selected the current location for the LSB, not only to be co-located with the existing biology building, but also to consolidate the faculty, students and facilities currently scattered in several locations around the Brown Campus. A.R. p. 403.

Pursuant to NEPA, 42 U.S.C. §§ 4321 to 4370, NASA and DOE issued an "environmental assessment" (EA) that evaluated the reasonably foreseeable impacts of the proposed LSB on the environment. NASA and DOE issued a draft EA and Finding of No Significant Impact (FONSI) with notice to interested persons in June, 2003, and accepted public comments on the proposed environmental assessment. On the basis of the analysis in the EA and upon consideration of the public input received, NASA and DOE concluded that the construction and operation of the proposed LSB would not have a significant impact on the environment. Accordingly, the agencies issued a final EA in July, 2003 and a FONSI on August 7, 2003. Plaintiffs challenge the adequacy of the Federal defendants' compliance with NEPA.

## II. JUDICIAL REVIEW IS LIMITED TO THE ADMINISTRATIVE RECORD

Judicial review of the adequacy of an EA and FONSI prepared by a federal agency is governed by the Administrative Procedures Act (APA), 5 U.S.C. § 706. "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Friends of the Earth v. Hintz, 800 F.2d 822, 829 (9th Cir. 1986) (quoting Florida Power & Light Co., 470 U.S. at 743-44). See also South Shore Hospital Inc. v. Thompson, 308 F.3d 91, 97 (1st Cir. 2002) (This standard tightly circumscribes judicial review). Under the APA, a court is to review an agency's decision on the basis of the administrative record that was before the agency at the time the decision was made.

Both the Supreme Court and the First Circuit have emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985); Sierra Club v. Marsh, 976 F. 2d 763, 772 (1st Cir. 1992); Valley Citizens for a Safe Environment v. Aldridge, 886 F.2d 458, 460 (1st Cir. 1989); City of Waltham v. United States Postal Service, 786 F. Supp. 105, 115 (D. Mass. 1992), aff'd on appeal 11 F.3d 235 (1st Cir. 1993).

Courts are not to consider information "that was not available at the time the [agency] made its decision." Airport Cmty. Coalition v. Graves, 280 F. Supp.2d 1207, 1213 (W.D. Wash. 2003) (noting that consideration of "new information represents 'Monday morning quarterbacking.' If the court were to consider this new information in an arbitrary and capricious analysis, the court would effectively transform that analysis into *de novo* review, a level of review for which the court is not authorized."). See also Bradley v. Weinberger, 483 F.2d 410, 415 (1st Cir. 1973) ("It is a re-view, a second look at the same material, not a re-doing"); and Harvard Pilgrim Health Care of New England v. Thompson, 318 F. Supp. 2d 1, 8 (D. R.I. 2004); nor is there any basis for submitting, through an extra-record declaration, material that "already exists in the record." Southwest Ctr. for Biological Diversity v. US Forest Service, 100 F.3d 1443, 1451 (9th Cir. 1996); South Shore Hospital Inc., 308 F.3d at 97.

This Court recently identified four narrow exceptions to record review in APA cases: (1) the agency knew of an important matter that was unavailable to a party; (2) the agency relied on some important but secret information that was not part of the record; (3) the court needs expert testimony to help it understand matters in the agency record or needs additional factual evidence to aid its understanding; or (4) the agency engaged in bad faith or other improper behavior that warrants supplementing the record. Harvard Pilgrim Health Care of New England, 318 F. Supp. 2d at 8; Sierra Club v. Marsh, 976 F. 2d at 771; Valley Citizens, 886 F.2d at 460; and Town of Norfolk v. United States Corps of Engineers, 968 F.2d 1438, 1458 (1st Cir. 1992).

These exceptions are narrowly construed and plaintiffs bear the "heavy burden of showing that it is necessary to supplement the administrative record". Harvard Pilgrim Health Care, 318 F. Supp. 2d at 9. The cases cited by plaintiffs do not hold otherwise. In fact, in Sierra Club v. Marsh, 976 F. 2d at 771, citing Valley Citizens, the First Circuit noted that where there was a failure to explain administrative action so as to frustrate effective judicial review, the remedy is to obtain *from the agency*, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary. If the record is not sufficient to judge the agency's decision, the decision should be remanded. Courts are not to consider "technical testimony ... elicited for the purpose of determining the scientific merit of the [agency's] decision." Asarco, Inc v. U.S. Envtl. Prot. Agency, 616 F.2d 1153, 1161 (9th Cir. 1980). See also Browning-Ferris Industries of South Jersey, Inc. v. Muszynski, 899 F.2d 151, 164 (2d Cir. 1990).

If, however, the Court determines that the administrative record is deficient and that consideration of extra-record evidence falling within one of the four exceptions is appropriate, such evidence must still conform to the Federal Rules of Evidence, including Rule 402 which requires that facts alleged be relevant under the substantive statute at issue, and Rule 702 which governs admissibility of expert opinion testimony. Under Rule 702, expert opinion testimony is admissible only if the Court determines that "scientific, technical, or other specialized knowledge will assist the trier of fact," that the proffered witness is qualified as an expert, and that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) (courts must act as gatekeepers to exclude unreliable expert testimony). The requirement that expert testimony be reliable applies to all expert testimony, not just scientific expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Irvine v. Murad Skin Research Laboratories, Inc., 194 F.3d 313, 320 (1st Cir. 1999). The proponent of the testimony bears the burden of proving that the requirements of Rule 702 are satisfied before the testimony is allowed.

See Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003); Smelser v. Norfolk Southern Railway Co., 105 F.3d 299, 303 (6th Cir. 1997).

## III. PLAINTIFFS FAIL TO CARRY THEIR BURDEN OF DEMONSTRATING THE EXTRA-RECORD DECLARATIONS FALL INTO ANY OF THE EXCEPTIONS TO RECORD REVIEW

### A. The Declaration of Eileen Rosenberg-Black

The Rosenberg-Black declaration should not be added to the record in this case. Rosenberg-Black's testimony does not fall into any of the exceptions to administrative record review. Her declaration is "offered to show that the human health impacts on residents living in the vicinity of the proposed facility is (sic) not simply an academic question, given her existing compromised immune system." Plaintiffs' memo, p. 8. While the Federal defendants do not contest the use of extra-record declarations for the purpose of demonstrating standing, plaintiffs appear to offer the declaration for something more than proof of standing.

Rosenberg-Black's testimony relates to an illness for which she was treated in May, 2002, and related sequelae. She is not an expert, and her declaration - to the extent offered to demonstrate "how the emissions of toxic air pollutants from the proposed facility could have adverse human health impacts on students and nearby residents who are exposed to these emissions" (plaintiff's memo, p. 7) - cannot be allowed to supplement the administrative record. Moreover, the information regarding Rosenberg-Black's illness was clearly in existence before the agencies rendered their decision, and could have been brought to the agencies' attention during the public comment period so that it could be considered and addressed. The courts should not accept through extra-record testimony material that the plaintiff had every opportunity to submit directly to the agency during agency proceedings. See Havasupi Tribe v. Robertson, 943 F.2d 32, 34 (9th Cir. 1991); see also Southwest Ctr. for Biological Diversity, 100 F.3d at 1451. Developments in Rosenberg-Black's condition after the agencies' decision are likewise excluded. The adequacy of an agency's decision must be judged by the record that was before the agency at the time the decision was made. It is not appropriate "to use post-decision information as a new rationalization either for

sustaining or attacking the Agency's decision." Ass'n of Pacific Fisheries v. United States Envtl. Prot. Agency, 615 F.2d 794, 811-812 (9th Cir. 1980); see Airport Cmty. Coalition, 280 F. Supp. 2d at 1212.

**2. The Declaration of S. David Graber**

The Graber declaration should not be added to the record in this case. Graber's testimony does not fall into any of the exceptions under which this Court may consider extra-record evidence. Moreover, the assertion that the agencies failed to adequately consider "the emissions of toxic air pollutants from the proposed facility" and their effect on students and nearby residents is incorrect. Graber's declaration simply expresses his contrary opinion about that information.

The fact that Plaintiffs can find an expert to submit a declaration arguing with the conclusions drawn by agency experts on technical issues is not a permissible basis for considering evidence outside the administrative record in an APA case, particularly because questions about whose experts are correct are not questions for the court to answer. See, e.g., Friends of Endangered Species, Inc., 760 F.2d at 986 ("NEPA does not require that we decide whether an [environmental review] is based on the best scientific methodology available, nor does NEPA require us to resolve disagreements among various scientists as to methodology."); and Laguna Greenbelt Inc. v. U.S. Dep't of Transp., 42 F.3d 517, 526 (9th Cir. 1994).

> [T]he fact that Appellants cite an expert who agrees with their position and alleges a lack of analysis is not dispositive. It merely reflects the crux of their complaint--they disagree with the Forest Service's decision. Our job is not to question the wisdom of the Forest Service's ultimate decision or its conclusion concerning the magnitude of [environmental] impacts. Rather, we must examine the administrative record, as a whole, to determine whether the Forest Service made a reasonable, good faith, objective presentation of those impacts sufficient to foster public participation and informed decision making.

Colorado Envtl. Coalition v. Dombeck, 185 F.3d 1162, 1176-77 (10th Cir. 1999) (internal citations omitted). Thus, Graber's testimony, because it is offered simply to disagree with the expert opinion of NASA and DOE and does not fall into any of the record review exceptions, must not be allowed.

In addition, while Graber may qualify as an expert in civil engineering, his resume is vague

with respect to his employment history. He might qualify as an expert in "environmental engineering", although it appears that his concentration has been on water quality, rather than air quality. This area of concentration perhaps explains why Graber consulted with a purported "Air Quality and Industrial Ventilation Design consultant". Graber Decl. ¶ 4. However, the Graber declaration goes far beyond the environmental, and into the medical field. To the extent he is offered as an expert rendering causation opinions, or opinions on health issues, his declaration should not be allowed. Graber Decl. ¶¶ 23, 24. In any event, Graber fails to establish, as required by Rule 702, that he has the necessary expertise to evaluate the emissions analyzed in the EA, or other expertise sufficient to allow an opinion that the specific emissions will have an adverse effect on lung function, the cardiovascular system, human carcinogenicity, chemical sensitization, reproduction and the like. Moreover, Graber fails to demonstrate that his conclusions are based upon sufficient facts or data, or that his testimony is the product of reliable principles and methods.

The EA covers a broad spectrum of issues, including site alternatives, action alternatives, land use, geology, soils, biological resources, water resources, traffic and parking, noise, cultural and historic resources and socioeconomic resources, as well as air quality and emissions during both construction and operation of the LSB. Graber's complaint with the EA is quite narrow. In fact, Graber focuses on just one of these many issues: air emissions. He limits his opinions to the topic of air emissions once the LSB becomes operational. Graber's opinion is that the agencies' analysis of whether emissions of toxic air pollutants from the new laboratories, in conjunction with emissions from existing laboratories, would have human health impacts was "deficient". Graber Decl. at ¶ 5. His opinion, however, is based, in large part, on a misunderstanding of the EA.

Paragraphs 8 through 18 detail a litany of deficiencies with the "RWDI report". These

concerns are irrelevant, as the EA does not rely on the RWDI report at all.[1] Rather, the report, which is attached as Appendix B to Brown's submission to the State Historic Preservation Officer, is merely cited in passing as one commissioned by Brown (A.R. 84, 107). By way of comparison, the Acentech 2002a report, which was relied upon, was incorporated into the EA by reference (A.R. 738, 739, and 753).

Paragraph 19 incorrectly asserts that the chemicals that will be emitted are not specified in

---

[1]/ In paragraphs 8, 9, 10 and 11, Graber focuses on the "dilution factor" of fugitive air emissions from the LSB, but ignores the fact that the expected levels of emissions from the LSB are so low that they do not require regulation, making a dilution factor irrelevant. "None of these emissions would rise to a level requiring an air toxics permit from RIDEM under Rhode Island's Air Toxic Regulations because they would be *far below the minimum* quantities stated in the regulations (Air Pollution Control Regulation No. 22)." A.R. 749 (Emphasis supplied). Not only are the anticipated emissions levels lower than the regulatory threshold, they were conservatively estimated. The existing biology building, which contains 80 labs, generates approximately 1300 pounds of emissions. The new LSB will contain only 50 labs, and its emissions are conservatively estimated at 1500 pounds per year. Even at these estimates, the emissions levels are below the level requiring regulation. A.R. 749, n. 3. See also A.R. 733 (Research activities would not result in the release of any radioactive emissions to the public); 751 ("air emissions from both construction and operation would be below the *de minimis* emissions level"); and A.R. 760 (Fugitive emissions from the laboratories in the existing Biomedical Complex and the other laboratories at Brown University, would not result in cumulative emissions exceeding the minimum quantities of air toxics regulated by RIDEM). Data in the administrative record, relied on by NASA and DOE supports these conclusions. A.R. 620 ("To put this emission volume into context, a 2002 Ford Focus driven 12,500 miles in a year would emit more than 8,000 pounds of pollutants, primarily carbon dioxide and carbon monoxide.")

Paragraphs 12, 13, 14 and 15 also focus on the RWDI report. Graber's point in Paragraph 14 that the RWDI report did not contain information reflective of physically modeling or wind-tunnel-testing is correct, but irrelevant, as the report was not relied upon. Nor were the report's recommendations given credence. For example, until emissions reach the regulatory threshold, stack height and location are irrelevant. Similarly, paragraph 15 focuses on the height of the building, which is irrelevant given the *de minimis* level of emissions. Ironically, as mentioned indirectly in paragraph 16, the building height had been lowered to accommodate the community's aesthetic complaints. A.R. 787.

Paragraphs 16 through 18 continue the litany of fault with the RWDI report. In ¶ 17, Graber quibbles with the manner in which the EA's analysis was undertaken and the failure to reference state limits. Even if this information were credible, which it is not, it would not warrant supplementing the record. The limits that come from RIDEM's Regulation No. 22 were indeed used as a basis for comparison in the air emissions analysis. A.R. 749. The criticism that the "downwind impact" of the emissions was not addressed again ignores those very regulations, which require that only those emissions reaching a certain regulatory threshold require study as to their impact on the environment.

the EA. Not only are they specified, Graber references them himself in ¶ 11.[2] In paragraph 20, Graber complains that the EA does not clarify whether a larger animal facility will be built in the proposed LSB. This complaint is without merit. The expected amount of 1500 pounds of emissions covers all emissions for the LSB, including the animal facility.[3] The inaccuracy of this and the similar assertion in paragraph 21, that the types and amounts of emissions are not estimated, is decisively refuted by the record. Moreover, plaintiffs' declarant asks NASA and DOE to speculate on the types of research projects Brown might possibly undertake at some future unspecified date and then to further speculate that Brown will illegally increase the amount of emissions it generates above *de minimis* levels without regulatory review. NEPA does not require evaluation of such speculative events. NEPA only obligates an agency to discuss the environmental impacts of a proposed action, and then only such actions as are "reasonably foreseeable." Presidio Golf Club v. Nat'l Park Serv., 155 F.3d 1153, 1163 (9th Cir. 1998). It does not require an agency to discuss "remote and highly speculative consequences." Warm Springs Dam Task Force v. Gribble, 621 F.2d 1017, 1026 (9th Cir. 1980).

The balance of the Graber declaration, including paragraphs 22, 23, 25, 26, and 27, contains variations on the same theme – that the EA fails to evaluate the emission of dioxin or that potentially hazardous or toxic materials might cause a potential incremental impact on the surrounding population[4]. Of course, Graber's complaint that the EA fails to discuss pathological waste is incorrect. No pathological waste will be generated in the new facility (A.R. 756). At the same time, Graber ignores the fact that the quantity of total emissions for chemicals to be used in the LSB, individually and as a whole, is small. In fact, the total is under the amount regulated by the State. Had Graber opined that the *de minimis* level of emissions would cause an impact on the surrounding

---

[2]/ Primarily ethanol, but also chloroform methylene chloride, toluene, and xylene (A.R. 749).

[3]/ See note 2, *supra*, on the amount of emissions, and note 3, *supra*, on the types of emissions.

[4]/ As noted, a portion of paragraph 23 and paragraph 24 purport to offer expert testimony in areas well beyond even the stated expertise of Mr. Graber.

neighborhood, and that NASA and DOE ignored that problem in the EA – such opinions might be something for the Court to entertain. However, Graber offered no such opinions.

## IV. CONCLUSION

Neither of the proposed declarations falls into any of the exceptions under which this Court may consider extra-record evidence. Accordingly, plaintiffs' motion to supplement should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

ROBIN E. FEDER
Assistant U.S. Attorney
Chief, Civil Division
Fleet Center
50 Kennedy Plaza, 8th floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of August, 2004, I caused a copy of the foregoing to be forwarded, by postage prepaid mail, to :

J. William W. Harsch, Esq.
170 Westminster Street, Suite 800
Providence, RI 02903

Peter L. Koff, Esq.
Engel & Schultz, P.C.
124 High Street, Suite 2601
Boston, MA 2601

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
2300 Financial Plaza
Providence, RI 02903-2443

Beverly E. Ledbetter, Esq.
General Counsel
Office of the General Counsel
Brown University
110 South Main Street
Providence, RI