**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| WILLIAM G. TOURET, THOMAS A. BENNETT, WILLIAM G. BLACK, EILEEN F. ROSENGERG-BLACK, ANTIONETTE BREED ALLYN COPP, RONALD A. DWIGHT, G. DALE DULGARIAN, as he is Trustee for KSD TRUST, VIRGINIA G. RIGGS, MATTHEW L. SHILLING, YVONNE G. SHILLING, and COLLEGE HILL NEIGHBORHOOD ASSOCIATION, Plaintiffs | |
| v. | C.A. No. 04-198T |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; DEPARTMENT OF ENERGY and BROWN UNIVERSITY, Defendants. | |

**DEFENDANT BROWN UNIVERSITY'S OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD**

Defendant Brown University ("Brown") respectfully submits this Opposition to Plaintiffs' Motion to Supplement the Administrative Record ("Motion to Supplement").[1] As set forth in the accompanying memorandum of law, Plaintiffs' attempt to supplement the administrative record in this case with the Declarations of S. David Graber P.E. (the "Graber Declaration") and Eileen E. Rosenberg-Black (the "Rosenberg-Black Declaration") should be summarily denied for several reasons. First, as a matter of law, the Declarations do not fit within the narrow exceptions to the "record rule" under which agency appeals are based on and limited to the administrative record. There is no evidence that either Declaration is necessary to enable this Court to perform its task of judicially reviewing the decision of the agencies below. On the contrary, the Court has before it a

[1] Brown also objects to any attempt by Plaintiffs to file a supplemental or separate motion relating to "additional documents which were part of the administrative record."

13

voluminous administrative record which includes documents that address the agencies' analysis with respect to air emissions.

Second, as a practical matter, even if Plaintiffs could persuade this Court that one or more of the "record rule" exceptions applies, the Declarations should still be excluded because their contents cannot further this Court's task of evaluating whether the Department of Energy ("DOE") and the National Aeronautics and Space Administration ("NASA") met their responsibilities under the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA"). The conclusions in the Declarations are premised on irrelevant and erroneous information and assumptions such that they are wholly unreliable.

Finally, and perhaps most importantly, Brown would be prejudiced if Plaintiffs were allowed to inject new "evidence" into the record at this late date. Indeed, Brown submits that air emissions are merely the issue "du jour." Plaintiffs have been aware of, and actively involved in, objecting to the proposed Life Sciences Building at issue for more than two years and knew or should have known that it would result in certain emissions. However, Plaintiffs opted to focus their challenge to the project on historical preservation issues. When this strategy proved to be unsuccessful, Plaintiffs turned their attention to air emissions. However, it was not until recently (when the public comment period has long since closed and while construction of the project is well under way) that Plaintiffs started actively pursuing their concerns about air emissions. Therefore, the Court should deny Plaintiffs' Motion to Supplement.

Respectfully submitted,

JOSEPH AVANZATO (#4774)
KRISTEN W. SHERMAN (#5595)
ADLER POLLOCK & SHEEHAN P.C.
2300 Financial Plaza
Providence, RI 02903-2443
Tel. (401) 274-7200
Fax (401) 351-4607

and

BEVERLY E. LEDBETTER, ESQ. (#2208)
General Counsel
Office of the General Counsel
Brown University
110 South Main Street
Providence, RI
Tel: (401) 863-9900
Fax: (401) 863-1199

Attorneys for Defendant Brown University

Dated: August 31, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the within was hand delivered on this 31st day of August, 2004, to J. William Harsch, Esq., 170 Westminster Street, Suite 800, Providence, Rhode Island and Robin Feder, Esq., United States Attorney's Office, District of Rhode Island, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903 with a copy sent via facsimile and first-class mail postage prepaid to Peter L. Koff, Engel & Schultz, P.C., 125 High Street, Suite 2601, Boston, MA 02110.

April M Fontaine

308758_1.DOC

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| WILLIAM G. TOURET, THOMAS A. BENNETT, WILLIAM G. BLACK, EILEEN F. ROSENGERG-BLACK, ANTIONETTE BREED ALLYN COPP, RONALD A. DWIGHT, G. DALE DULGARIAN, as he is Trustee for KSD TRUST, VIRGINIA G. RIGGS, MATTHEW L. SHILLING, YVONNE G. SHILLING, and COLLEGE HILL NEIGHBORHOOD ASSOCIATION, | ) | |
| Plaintiffs | ) | |
| v. | ) | C.A. No. 04-198T |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; DEPARTMENT OF ENERGY and BROWN UNIVERSITY, | ) | |
| Defendants. | ) | |

**DEFENDANT BROWN UNIVERSITY'S MEMORANDUM OF LAW IN <u>OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD</u>**

Defendant Brown University ("Brown") submits this memorandum of law in support of its concurrently filed Opposition to Plaintiffs' Motion to Supplement the Administrative Record ("Motion to Supplement").[1] The instant litigation is the final step in Plaintiffs' crusade to stop the construction of Brown University's new Life Sciences Building (the "Project"). Having spent years unsuccessfully trying to thwart the Project on historical preservation grounds, Plaintiffs have now turned to litigation over allegedly dangerous air emissions from the Project. Specifically, Plaintiffs have filed a suit against Brown, the Department of Energy ("DOE") and the National Aeronautics and Space Administration ("NASA") which alleges, *inter alia*, that the agencies abdicated their

[1] Brown further objects to Plaintiffs' suggestion that they would like to file a supplemental or separate motion relating to "additional documents which were part of the administrative record." Plaintiffs offer no explanation as to why these other documents are not addressed in their Motion to Supplement. Moreover, this Court's Scheduling Order does not contemplate further motion practice on the subject.

responsibilities under the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA"), by failing to take a hard look at the potential impacts of air emissions from the Project on the surrounding community and deciding not to prepare an Environmental Impact Statement ("EIS"). In support of their case, Plaintiffs have moved to supplement the record with the Declaration of S. David Graber P.E. (the "Graber Declaration") and the Declaration of Eileen E. Rosenberg-Black (the "Rosenberg-Black Declaration").

As detailed below, the Graber and Rosenberg-Black Declarations are neither necessary nor appropriate for this Court's consideration.[2] First, as a general rule, agency appeals such as this one are decided based on the administrative record alone unless one of the narrow exceptions to this "record rule" applies. The Graber Declaration, in particular, does not fall within any of the recognized exceptions. While cloaked in the garb of an "expert" affidavit," it is no more than a post-hoc attempt to second guess NASA's and the DOE's substantive conclusions in issuing its Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") for the Project. Therefore, as a matter of law, this Court should not permit Plaintiffs to supplement the record.

Second, as a practical matter, the Graber Declaration should be excluded because it can do nothing to further this Court's task of reviewing the record. Specifically, the opinions and conclusions in the Graber Declaration are fundamentally flawed because they are premised on incorrect or irrelevant facts and assumptions.

Finally, and perhaps most importantly, it would be inequitable to permit Plaintiffs to inject

---

[2] While this memorandum specifically refers to the Graber Declaration, Brown also objects to the admission of the Rosenberg-Black Declaration. However, Brown submits that the Rosenberg-Black Declaration does not merit any extensive analysis herein. Plaintiffs do not even purport to argue that the Rosenberg-Black Declaration falls within one of the exceptions to the "record rule" discussed below. Rather, they only generally offer the Rosenberg-Black Declaration " to show that the human health impacts on residents living in the vicinity of the proposed facility is not simply an academic question . . . ."

new "evidence" into the record at this late date. As set forth below, Plaintiffs have been aware of, and actively involved in, objecting to the Project for more than two years and knew or should have known that the Project would have certain emissions. However, Plaintiffs opted to focus their challenge on historical preservation issues. It was not until that strategy proved unsuccessful that Plaintiffs turned their attention to air emissions. Even then, despite the fact that Plaintiffs had time before and during the public comment period, they failed to offer any evidence for the administrative record on the issue of air emissions. It is only now, almost a year after the close of the public comment period and after construction of the Project is well under way, that Plaintiffs attempt to create an issue regarding air emissions through the Declarations. Therefore, this Court should deny Plaintiffs' Motion to Supplement.

## LEGAL ARGUMENT

Notwithstanding their differences of opinion about the ultimate issues, the parties are in agreement on the general framework for this Court's review. Specifically, the parties agree that (1) agency appeals, including challenges to an agency's decision not to prepare an EIS under NEPA, are governed by the standards in the federal Administrative Procedures Act, 5 U.S.C. § 706 *et seq.* ("APA");[3] (2) under the so-called "record rule," judicial review in APA appeals such as this one are ordinarily confined to a review of the administrative record "that was before the agency at the time it made the decision in issue"[4] and "not some new record made initially in the reviewing court."[5]; and (3) the "record rule" is subject to certain judicially created exceptions.[6] It is the application and scope of these exceptions that the parties dispute.

---

[3] Airport Impact Relief, Inc. v. Wykle, 192 F.3d 197, 202 (1st Cir. 1999). See Plaintiffs' Memorandum at p. 5.
[4] Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985); City of Waltham v. U.S. Postal Service, 786 F. Supp. 105, 116 (D. Mass. 1992). See Plaintiff's Memorandum at p. 5.
[5] Strahan v. Linnon, 966 F. Supp. 111, 114 (D. Mass. 1997) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).
[6] See Plaintiffs' Memorandum at p. 5.

## I. THE GRABER DECLARATION SHOULD NOT BE CONSIDERED BECAUSE IT DOES NOT FALL WITHIN ANY OF THE NARROW EXCEPTIONS TO THE "RECORD RULE"

Consistent with the "record rule," there are only narrow instances in which supplementation of the record is appropriate. Although the federal courts are far from announcing a universal rule with respect to the "record rule" exceptions, it is a fair summary of the caselaw that supplementation may be allowed where (1) material is necessary to determine whether an agency has considered all relevant factors and has explained its decision; (2) where the agency relied on extra-record materials in reaching its decision; (3) when supplementation is necessary to explain complex or technical subject matter; and (4) when plaintiff can make a showing of bad faith.[7] Plaintiffs appear to contend that exceptions (1) and (3) apply in this case. See Plaintiffs' Memorandum at p. 5. They assert that the Declarations would be "helpful" and would "assist" the Court is evaluating the merits. Id.

Contrary to Plaintiffs' suggestions, it is need rather than helpfulness that determines whether supplementation is allowed. Indeed, in deciding whether to allow supplementation, the First Circuit decisions have focused on the narrow issue of whether the record is sufficient for a reviewing court to "carefully review[ ] the record and satisfy[ ] itself that the agency has made a rational decision . . . founded on a reasoned evaluation of the relevant factors."[8] It follows that supplementation may be permitted "[w]here there was a failure to explain administrative action so as to frustrate judicial review."[9] Similarly, the First Circuit in Airport Impact Relief stated that "it is precisely when there is nothing in the administrative record that affidavits . . . are needed and allowed under the *Sierra Club II*." 192 F.3d at 209.

---

[7] See Westlands Water Dist. v. U.S. Dept. of Interior, 275 F. Supp. 2d 1157, 1193 n.29 (E.D. Cal. 2002); League of Wilderness Defenders v. Marquis-Brong, 259 F. Supp. 2d 1115, 1127 (D. Or. 2003).
[8] Airport Impact Relief, 192 F.3d at 203 (citation omitted).
[9] Sierra Club v. Marsh, 976 F.2d 763, 772 (1st Cir. 1992) (quoting Camp v. Pitts, 411 U.S. 138, 143, 93 S. Ct. 1241, 1244 (1973) (per curiam) (internal quotations omitted).

There is no evidence, and Plaintiffs offer none, to suggest that the administrative record is so bare as to preclude the Court in this case from determining whether the agencies' analysis was sufficient. On the contrary, the administrative record that was before the agencies contains 1,084 pages in 123 documents. Many of these documents specifically relate to anticipated air emissions from the Project. For example, the record contains the following documents concerning air emissions for the Court's consideration: (1) the draft Submission to State Historic Preservation Officer (February 4, 2002) with attached Air Permit Summary (AR 39 at 0123-72);[10] (2) draft Environmental Assessment Report (February 2003) [AR 81 at 0399-427]; (3) draft Environmental Assessment (May 2003) [AR 97 at 0536-602]; (4) communications between the parties regarding air emissions [AR101 at 0614-15; AR104 at 0620-26; AR105 at 0627-30]; (5) the Final Environmental Assessment (July 2003) [AR 107 at 0633-0704]; (6) the Rhode Island Department of Environmental Management "program letter" (July 17, 2003) [AR108 at 0705-07]; and (7) the Finding of No Significant Impact [AR 115 at 0799-802]. It belies belief that this Court cannot, based on the present record, determine whether NASA and DOE looked at the relevant factors in deciding that an EIS was not necessary.

It also cannot reasonably be said that this case involves such complex or technical subject matter that the Graber Declaration is necessary. As set forth below, because of the extremely low level of anticipated emissions from the Project, it was not necessary for the agencies to undertake any extensive modeling or analysis. Even if such modeling or analysis had been used, it is far from clear that the Court could not perform its review without Plaintiffs' assistance.

Moreover, even if this Court needed such technical guidance, the Graber Declaration purports to do far more than enlighten. Through the Declaration, Plaintiffs effectively usurp this

---

[10] Hereinafter, the record references will contain the specific document numbers followed by the designated page numbers.

Court's role by offering legal conclusions about the sufficiency of the agencies' review. For example, Graber summarily states his "opinion" that "[t]he analysis of the potential air quality impacts of the proposed Life Sciences Building . . . was totally deficient, was not based upon adequate data, and does not answer the question whether the building could cause significant health effects in the nearby population of residents, students, and Brown University personnel in the area of the building." Graber Declaration at ¶ 5. Similarly, Graber opines as to the alleged "major defects" in the EA and FONSI. Id. at ¶¶ 6-7. Although Mr. Graber has an opinion as to whether or not the analysis performed by the agencies was adequate, that question is for this Court alone to determine.

Similarly, the Graber Declaration attempts to offer opposing scientific determinations. It states that a proper EA "should have started by using as a basis of comparison in the screening analysis air-quality limits which are protective of the health of the general public. Such limits might include those of the Rhode Island Department of Environmental Management's Regulation No. 22, or such additional appropriate limits." Graber Declaration at ¶ 17 (emphasis in original). Courts from our sister states have rejected similar attempts to submit materials that "offer[s] legal conclusions or present[s] opposing scientific determinations regarding environmental concerns."[11] In doing so, they have explained that it is not the reviewing court's role to "substitute its judgment for the agency's own scientific determinations."[12] Moreover, it is not the court's role "to resolve disagreements among experts."[13] Therefore, this Court need not look past the face of the Graber Declaration to deny Plaintiffs' Motion to Supplement.

---

[11] Waltham, 786 F. Supp. at 120.

[12] Id. at n. 14.

[13] Friends of Richards-Gebaur Airport v. Federal Aviation Admin., 251 F.3d 1178, 1191 (D. Mass. 2001). See Lee v. U.S. Air Force, 354 F.3d 1229, 1243-44 (10th Cir. 2004) (affirming decision to strike supplemental affidavits on the basis that a "disagreement regarding the reliability of the methodology and whether it has been applied accurately . . . is an insufficient basis for admitting extra-record evidence"); Town of Norfolk v. U.S. Envtl. Prot. Agency, 761 F. Supp. 867, 874-75 (D. Mass. 1991) (rejecting evidence submitted by the

## II. EVEN IF THE GRABER DECLARATION WAS ADMISSIBLE, IT WOULD NOT FURTHER THE COURT'S JUDICIAL REVIEW

Even if Plaintiffs could somehow persuade the Court that the record is insufficient, the Graber Declaration would not cure that alleged defect because Graber's opinions and conclusions are premised on irrelevant and erroneous information and assumptions. First, in attacking the agencies' decision, the Graber Declaration erroneously relies upon alleged deficiencies in the so-called "RWDI Report." Graber's approach is premised wholly on the unsupported assumption that "the EA relies largely on" the RWDI Report and the dilution factor approach therein. Graber Declaration at ¶ 8. Indeed, the Graber declaration is largely directed at challenging the RWDI Report analysis and conclusions. See id. at ¶¶ 8, 10, 12-15, 18 and 20. However, in reaching their conclusion that an EIS was not required, the agencies did not rely on the RWDI Report. Indeed, the EA only mentions the RWDI Report once and makes clear that it was "to provide guidance in locating new air intakes." [AR 110 at 0749.]

In contrast, the agencies' conclusions regarding emissions from the Project were based on an analysis of air emissions from the existing Biomedical Complex at Brown from which the expected emissions from the Project were derived. The EA expressly states that the estimate of emissions is "[b]ased on information from the existing Biomedical Complex." [AR110 at 0749.][14] In estimating the emissions from the Project, the agencies considered not only the types of emissions, but also the amount of the chemicals used in the existing Biomedical Complex. For example, regarding the type of emissions expected, the EA makes clear that the agencies looked at and considered emissions of ethanol, chloroform, methylene chloride, toluene and xylene. Id.

---

Town of Norfolk on the basis that the "evidence and studies . . . merely disagree with the EPA's conclusions [and do] nothing to indicate that EPA ignored relevant information or relied on secret sources.").

[14] This analysis was detailed and explained to Plaintiff William Touret in a June 20, 2003 e-mail from NASA. [AR 101 at 0614-15.]

With respect to the volume, they found that "it is anticipated that the Life Sciences Building will house 51 laboratory modules" as opposed to the then-existing 80 labs in the Biomedical Complex. Id. The EA states that the existing labs in the Biomedical Complex generated 1,330 pounds of emissions in 2001. Id. at n.3. As the EA explains, the level of emissions for the existing complex fell to 1213 pounds in 2002 such that the estimate of 1500 was highly conservative. Id. Based on the above approach, the EA concluded that the Project would conservatively generate 1500 pounds of air emissions each year. As noted in the EA, these estimated levels of emissions did not "rise to a level requiring an air toxics permit from RIDEM under Rhode Island's Air Toxics regulations because they would be far below the minimum quantities stated in the Regulations (Air Pollution Control Regulation No. 22)." Id.

Because the emissions limits from the Project would be too low to subject them to state regulation, much of Graber's Declaration is irrelevant. In short, if the threshold levels of emissions from the Project are not of sufficient concern in the first instance, it makes no difference where or how they are emitted or travel. Therefore, Graber's concerns about matters such as stack heights and location of the Project in "a valley or basin" are inapposite. Id. at ¶¶ 16, 17, 27. Similarly, Graber's call for a dilution analysis to evaluate the issue of downwind impacts is unpersuasive. Id. at ¶ 17.

Finally, the Graber Declaration would not assist this Court in its analysis because it is replete with factual errors. For example, the Graber Declaration asserts that the EA fails to identify the chemicals likely to be used in association with the Project. Id. at ¶ 19. However, the EA specifically lists ethanol, chloroform, methylene chloride, toluene and xylene as being among the chemicals that were being used in the existing Biomedical Complex and that would be employed in the Project operations. [AR 112 at 0749.] In addition, the assertions in the Graber Declaration suggest that the EA did not consider the impacts of a larger animal facility as part of the Project. See Graber

Declaration at ¶ 20. However, because the existing Biomedical Complex contains such a facility, it was considered in estimating the overall emissions from the existing complex, and therefore the Project. For the same reasons, the Graber Declaration's attempt to argue that the EA fails to consider emissions from pathological waste incinerators in the proposed building is erroneous. Id. at ¶ 22. Therefore, the Declarations would be of no assistance to this Court's analysis.

## III. THIS COURT SHOULD CONCLUDE THAT PLAINITFFS' ATTEMPT TO SUPPLEMENT IS UNTIMELY AND WOULD PREJUDICE BROWN

As a matter of fundamental fairness, Plaintiffs' proffered "evidence" should be excluded because Plaintiffs should not now be allowed to present information that they could and should have raised long ago. As evidenced by the administrative record, Plaintiffs were aware of the Project years before they filed their administrative record comments. At least as early as April of 2000, plans for the Project were being publicized in *The Providence Journal Bulletin.* [AR5 at 0006]. Moreover, as early as June of 2000, Brown was reaching out to the local community and holding local public meetings to discuss the Project and its plans to relocate specific departments into the new building. [AR1 at 0004; AR6 at 0011.]

Similarly, in early 2002, Plaintiffs began actively voicing their opposition to the Project. Plaintiff College Hill Neighborhood Association ("CHNA") was publicizing its opposition to the Project based on issues relating to "scale, design, emissions noise and traffic" [AR33 at 0077] and even reached out to Senator Jack Reed in an attempt to solicit his support for the opposition. [AR 46 at 0255-56.] Plaintiff William Touret also contacted NASA (on behalf of CHNA) and Senator Reed in May of 2002 to voice objections to the Project. [AR47 at 0281-84; AR49 at 0287-89.] However, these efforts centered around historical preservation issues. Plaintiffs did not pursue the issue of air emissions until April of 2003, when their attorney sent an e-mail to NASA to inquire. [AR 84 at 0455].

Following April of 2003, Plaintiffs (represented by counsel) fully advanced their concerns about air emissions, and the agencies responded. [See, e.g., AR 100, 104, 105, 122.] Indeed, the agencies made some corrections and amended the draft EA section on air emissions following Plaintiffs' submissions. [AR 107 at 0699.] However, Plaintiffs did not offer the opinions of Graber (or any other expert) on the issue of air emissions during or after the public review process. Indeed, Plaintiffs' claims about the alleged EA deficiencies as they relate to air emissions did not surface until at or just before the litigation was filed in May (almost a year after the close of the public comment period and the start of construction of the building).

Having knowingly opted to place the health of buildings before the health of people as their initial strategy, Plaintiffs should not now be heard to complain about air emissions at Brown's expense. Surely, Plaintiffs knew or should have known that the existing Biomedical Complex resulted in air emissions, and that the Project would also cause air emissions. Nonetheless, Plaintiffs sat silently and watched while Brown moved forward with building construction. Where as here there is no explanation for a plaintiff's failure to offer the proffered extra-record evidence during the agency review process, courts are particularly reluctant to allow supplementation.[15] Therefore, this Court should find that Plaintiffs are not permitted to supplement the record and deny the Motion to Supplement.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion to Supplement the Administrative Record be denied.

---

[15] Newton County Wildlife Ass'n v. Rogers, 141 F.3d 803, 808 (8th Cir. 1998) (rejecting attempt to supplement when materials offered consisted of expert opinions and studies and there was no justification for not having presented them to the agencies).

Respectfully submitted,

JOSEPH AVANZATO (#4774)
KRISTEN W. SHERMAN (#5595)
ADLER POLLOCK & SHEEHAN P.C.
2300 Financial Plaza
Providence, RI 02903-2443
Tel. (401) 274-7200
Fax (401) 351-4607

and

BEVERLY E. LEDBETTER, ESQ. (#2208)
General Counsel
Office of the General Counsel
Brown University
110 South Main Street
Providence, RI
Tel: (401) 863-9900
Fax: (401) 863-1199

Attorneys for Defendant Brown University

Dated: August 31, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the within was hand delivered on this 31st day of August, 2004, to J. William Harsch, Esq., 170 Westminster Street, Suite 800, Providence, Rhode Island and Robin Feder, Esq., United States Attorney's Office, District of Rhode Island, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903 with a copy sent via facsimile and first-class mail postage prepaid to Peter L. Koff, Engel & Schultz, P.C., 125 High Street, Suite 2601, Boston, MA 02110.