**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| WILLIAM G. TOURET, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 04-198T |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al., | |
| Defendants. | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**
**FROM DEFENDANT BROWN UNIVERSITY**

Plaintiffs hereby move this Court for an order pursuant to Rule 37(a)(2), Fed.R.Civ.P., compelling defendant Brown University ("Brown") to provide answers to certain of plaintiffs' First Requests for Admissions.

The reasons why this Court should order Brown to provide answers to those requests are set forth in the accompanying memorandum.

Pursuant to Local Rule 13(d), the undersigned certify that they have conferred with counsel for Brown within ten days of service of Brown's objections to plaintiffs' requests for admissions and have attempted to resolve the objections by agreement.

In the event that the Court might be disposed not to grant the motion, plaintiffs request oral argument pursuant to Local Rule 12(b). Plaintiffs believe that oral argument would provide the Court with additional context that would assist the Court in deciding the motion. Plaintiffs further believe that both parties can be heard within a total of 20 minutes.

Dated: October 12, 2005

William G. Touret/Pro Se
11 South Angell Street #264
Providence, RI 02906-5206
Tel. (800) 345-0080
Fax (401) 831-5329

J. WILLIAM W. HARSCH/Bar No. 3688
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. (401) 454-4466
Fax (401) 351-3914

Attorney for Plaintiffs Thomas A. Bennett, William G. Black, Eileen F. Rosenberg-Black, Antoinette Breed, Allyn Copp, Ronald A. Dwight, Pamela Hext Dwight, G. Dale Dulgarian, as he is Trustee for KSD Trust, Virginia G. Riggs, Yvonne G. Shilling, and College Hill Neighborhood Association

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of October, 2005, I caused a copy of the foregoing to be hand-delivered to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Brown University
110 South Main Street
Providence, RI 02903

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

William G. Touret

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILLIAM G. TOURET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.,<br><br>Defendants. | CIVIL ACTION NO. 04-198T |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM DEFENDANT BROWN UNIVERSITY**

Plaintiffs submit this memorandum in support of their motion pursuant to Rule 37(a)(2), Fed.R.Civ.P., for an order compelling defendant Brown University ("Brown") to provide answers to certain of plaintiffs' First Requests for Admissions.

Background

This action arises under section 102(2)(C) of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4332(2)(C). By this action, plaintiffs challenge the decision by the federal agency defendants National Aeronautics and Space Administration ("NASA") and Department of Energy ("DOE") not to perform an Environmental Impact Statement (EIS) with respect to Brown's Life Sciences Building project, and their decision instead to prepare an Environmental Assessment (EA) and issue a Finding of No Significant Impact ("FONSI").

At a hearing on April 27, 2005, this Court set a four-month period of limited discovery. Thereafter, on May 4, 2005, the Court issued a pretrial order setting a Closure Date of September 1, 2005. On July 22, 2005, plaintiffs served Brown with their First Request for Admissions. On

August 22, Brown served objections and responses to those requests.[1] Of plaintiffs' 32 Requests for Admission, Brown refused to provide answers to all but seven of those requests. Of those 25 unanswered requests, plaintiffs seek an order compelling Brown to provide answers to Requests Nos. 8(a-f), 10(a-f), 11(a-f), 12-13, and 15-21, which are reproduced below. Brown refused to provide answers on the ground that the requests were outside the scope of the discovery that the Court described in its April 27, 2005 order or otherwise were not reasonably calculated to lead to the discovery of admissible evidence (see Exhibit A).

The purpose of plaintiffs' requests for admission that are at issue here is to establish that Brown did not disclose to plaintiffs or the public prior to the publication on or about June 2, 2003 of the Draft EA information relating to the fact that activities at the Life Sciences Building would have the potential to impact human health and the environment by reason of the use of chemical, radiological, and biological materials -- as was later disclosed in the Draft EA and Final EA.

The failure by the defendants to disclose that information to the public prior to the publication of the Draft EA and Final EA is relevant to plaintiffs' claim that NASA and DOE failed to afford plaintiffs a meaningful opportunity to obtain information about and thereby submit meaningful comments with respect to the Draft EA during the 30-day comment period that commenced on June 2, 2003, and that defendants failed otherwise to comply with NEPA's public participation requirements. Plaintiffs further allege that defendants, pursuant to those failures and other violations of NEPA's requirements, sought to and did improperly circumvent their obligation to prepare an EIS as opposed to the EA and FONSI that they prepared here.[2]

---

[1] Relevant excerpts from Brown's objections are annexed hereto as Exhibit A. Brown's responses to the Requests at issue here consisted solely of references to those objections.

[2] Those and other of plaintiffs' allegations of bad faith were set forth in plaintiffs' proposed amended complaint dated and filed February 28, 2005 (see ¶¶ 148-175). Although this Court on April 27, 2005 denied plaintiffs leave to file the proposed amended pleading, the Court

NASA and DOE decided, *prior* to the June 2, 2003 publication of the Draft EA, *not* to honor any possible future requests by the public for extensions of the 30-day comment period for the Draft EA. On May 19, 2003, Lizabeth R. Montgomery of NASA stated in an email message to Brown's consultant Lucinda Swartz of Battelle Memorial Institute, Marisa Quinn of Brown, and Peter Siebach of DOE:

> We would like to go with a 30 day comment period for the draft EA and draft FONSI. If requested, there is really no reason to grant an extension. The public has already had ample time to provide input (with all the outreach that Brown has done) and there is [*sic*] should be no new information. (Administrative Record "AR" 91 [0520])

But to the contrary, Brown had not advised the community that activities at the Life Sciences Building would have the potential to impact human health and the environment by reason of the use of chemical, radiological, and biological materials -- as the Final EA later provided (see AR 113 [0732-0734]). Furthermore, during that same period, Brown had not provided to plaintiffs or to the public, and Brown otherwise had refused written and oral requests by members of the public for, emissions-related reports and other information about the Life Sciences Building that Brown had within its possession since at least early 2002 and which was eventually cited in the Draft EA and Final EA. As indicated in the requests reproduced below, that withheld information included the so-called "RWDI Report" (AR 40 [0173-0205]), a "Submission to State Historic Preservation Officer February 4, 2002 (AR 40 [0084-0230])" and two "Acentech Reports" (see AR 113 [0753, 0784-0785]).[3] The requests for information by the public included a letter to Brown dated July 30, 2002 by plaintiff William Touret and a more

---

stated that plaintiffs could pursue their claims of bad faith pursuant to their original complaint (April 27, 2005 hearing transcript at pages 9-10).

[3] The Final EA incorporated the two reports by Acentech Incorporated ("Acentech"), dated February 27, 2002 and March 27, 2002, by reference (AR 98 [0573], AR 113 [0785]). The Draft EA incorporated the February 27, 2002 Acentech report by reference (AR 98 [0573]) and cited the March 27, 2002 report (AR 98 [0560]). Neither of the two Acentech Reports was included in

detailed expansion of the information requested in that July 30, 2002 letter, the latter of which Touret provided to Marisa Quinn and Stephen Morin of Brown at a meeting on September 5, 2002 concerning Touret's July 30, 2002 letter-request.[4]

The Draft EA that NASA and DOE published on June 2, 2003 -- which Brown and its consultant principally drafted -- failed to state that Brown did *not* disclose to the public in the pre-June 2, 2003 period the information that the Draft EA (and Final EA) later contained that indicated that activities at the Life Sciences Building would have the potential to impact human health and the environment by reason of the use of chemical, radiological, biological, and other materials. It also failed to state that Brown had received, and failed to honor, the written and oral requests by the public for such information during that same period. Rather, the Draft EA described only generally the various meetings in which Brown had participated with members of the public during that period (AR 98 [0582, 0599-0602]).

During the 30-day comment period for the Draft EA, members of the public, including certain of the plaintiffs here, requested additional time to submit objections to the Draft EA, in part by reason of the fact that the 66-page Draft EA and the reports that it incorporated by reference and otherwise discussed contained pages of highly technical information about potentially significant environmental impacts that defendants had not disclosed to the public previously (e.g., AR 106 [0627-0628], AR 123 [0891, 0896-0900, 0920-0921, 1037-1038, 1039, 1041, 1043-1045]). In their written comments regarding the Draft EA, plaintiffs and other members of the public also objected to the fact that Brown had not previously made available any of the technical reports cited in the Draft EA that had been in Brown's possession for over

---

the Administrative Record, however, because NASA and DOE apparently did not review them.

4 Copies of the July 30, 2002 Touret letter and the later detailed written expansion, which are not part of the Administrative Record, were previously filed with the Court on September 14, 2004 as Exhibits A and B to the September 14, 2004 Declaration of Plaintiff William G. Touret in Support of Plaintiffs' Motion to Strike. The Court did not decide that motion. Transcript of

one year, and which Brown had made available upon request only after the publication of the Draft EA (e.g., AR 106 [0627-0628], AR 123 [0891, 0893, 0897-0900, 0920-0921, 1037-1038, 1039, 1041, 1043-1045]).

Notwithstanding those written objections, NASA and DOE did not grant the public's requests for an extension of the 30-day comment period. And the Final EA made no mention of the fact that defendants had withheld from the public prior to June 2, 2003 the information that was later included in the Draft EA and Final EA to the effect that activities at the Life Sciences Building were anticipated to have the potential to impact human health and the environment by reason of the use of chemical, radiological, and biological materials (see AR 113 [0762, 0779-0788]).

The Requests for Admission that are at issue on this motion are set forth below. Within Requests 8, 10, and 11, we have set forth in boldface page references to the Final EA where certain of the relevant information was set forth:

8. At the October 16, 2001 public meeting about the Life Sciences Building project, Brown did not disclose:
   a. That Brown anticipated that the Life Sciences Building would discharge potentially hazardous air emissions from its laboratories. **(AR 113 [0732, 0747-0749])**
   b. That Brown anticipated that the Life Sciences Building would discharge approximately 1,500 pounds or more per year or more of potentially hazardous air emissions from its laboratories. **(AR 113 [0732, 0749])**
   c. That Brown anticipated that activities at the Life Sciences Building would have the potential to impact human health and the environment by reason of the use of chemical, radiological, and biological materials. **(AR 113 [0732-0734])**
   d. That Brown anticipated that activities at the Life Sciences Building could include the initiation of Biosafety Level 2 research, which could involve the management of a broad spectrum of indigenous, moderate-risk biological materials. **(AR 113 [0732-0733])**

---

November 17, 2004 hearing at 50-51.

e. That one or more sections of the Biomedical Building were already designated as Biosafety Level 2 areas.

f. That one or more sections of the Biomedical Building were already designated as Biosafety Level 3 areas.

10. At the November 28, 2001 public meeting about the Life Sciences Building project, Brown did not disclose:

a. That Brown anticipated that the Life Sciences Building would discharge potentially hazardous air emissions from its laboratories. **(AR 113 [0732, 0747-0749])**

b. That Brown anticipated that the Life Sciences Building would discharge approximately 1,500 pounds or more per year or more of potentially hazardous air emissions from its laboratories. **(AR 113 [0732, 0749])**

c. Th[at] Brown anticipated that activities at the Life Sciences Building would have the potential to impact human health and the environment by reason of the use of chemical, radiological, and biological materials. **(AR 113 [0732-0734])**

d. Th[at] Brown anticipated that activities at the Life Sciences Building could include the initiation of Biosafety Level 2 research, which could involve the management of a broad spectrum of indigenous, moderate-risk biological materials. **(AR 113 [0732-0733])**

e. That one or more sections of the Biomedical Building were already designated as Biosafety Level 2 areas.

f. That one or more sections of the Biomedical Building were already designated as Biosafety Level 3 areas.

11. At none of the public meetings about the Life Sciences Building project between the date of the November 28, 2001 public meeting about the Life Sciences Building project and the publication of the Draft EA on or about June 2, 2003 did NASA, DOE, or Brown disclose:

a. That the Life Sciences Building was anticipated to discharge potentially hazardous air emissions from its laboratories. **(AR 113 [0732, 0747-0749])**

b. That the Life Sciences Building was anticipated to discharge approximately 1,500 pounds or more per year or more of potentially hazardous air emissions from its laboratories. **(AR 113 [0732, 0749])**

c. That activities at the Life Sciences Building were anticipated to have the potential to impact human health and the environment by reason of the use of chemical, radiological, and biological materials. **(AR 113 [0732-0734]**

d. That activities at the Life Sciences Building could include the initiation of Biosafety Level 2 research, which could

involve the management of a broad spectrum of indigenous, moderate-risk biological materials. **(AR 113 [0732-0733])**

e. That one or more sections of the Biomedical Building were already designated as Biosafety Level 2 areas.

f. That one or more sections of the Biomedical Building were already designated as Biosafety Level 3 areas.

12. At no time prior to the publication of the Draft EA did Brown, NASA, or DOE advise plaintiffs of the existence of:

a. The RWDI Report.

b. The Submission to State Historic Preservation Officer February 4, 2002.

c. The Acentech Reports.

13. At no time prior to the publication of the Draft EA did Brown, NASA, or DOE offer to furnish one or more of the plaintiffs with a copy of:

a. The RWDI Report.

b. The Submission to State Historic Preservation Officer February 4, 2002.

c. The Acentech Reports.

15. By letter dated July 30, 2002 to Marisa Quinn of Brown (Exhibit C hereto), plaintiff Touret requested emissions-related and other information from Brown about the Biomedical Building and Life Sciences Building.

16. Plaintiff Touret sent a copy of his July 30, 2002 letter to Marisa Quinn to Michael McCormick of Brown.

17. On the date that Marisa Quinn of Brown received plaintiff Touret's July 30, 2002 letter, she was aware of the existence of:

a. The RWDI Report.

b. The Submission to State Historic Preservation Officer February 4, 2002.

c. The Acentech Reports.

18. On the date that Michael McCormick of Brown received the copy of plaintiff Touret's July 30, 2002 letter to Marisa Quinn of Brown, he was aware of the existence of:

a. The RWDI Report.

b. The Submission to State Historic Preservation Officer February 4, 2002.

c. The Acentech Reports.

19. In response to plaintiff Touret's written request dated July 30, 2002, and at the invitation of Marisa Quinn of Brown, plaintiff

Touret met with Marisa Quinn and Stephen Morin of Brown on September 5, 2002 at Brown's Maddock Alumni Building.

20. At the September 5, 2002 meeting with Marisa Quinn and Stephen Morin of Brown, plaintiff Touret provided Quinn and Morin with a more detailed request for information about the Biomedical Building and Life Sciences Building (Exhibit D hereto).

21. At the conclusion of the meeting on September 5, 2002 with plaintiff Touret, Quinn and Morin declined to provide any of the information plaintiff Touret had requested (with the exception of information relating to the standards of care that Brown applied at its Animal Care Facility, which Ms. Quinn offered to provide). Mr. Morin stated that it would require too much time to produce the information.

Brown did not answer any of the above requests. A true copy of the relevant portions of their objections are attached hereto as Exhibit A.

Discussion

At the April 27, 2005 hearing on plaintiffs' motion to file their proposed amended complaint, this Court set a four-month period of limited discovery. The Court directed that the scope of the parties' discovery was to be governed by the exceptions pursuant to which the courts permit a federal agency's administrative record to be supplemented, namely: (1) where the administrative record is not complete, because the record does not include all relevant information that was made available to or considered by the agency or because the record fails to include adverse information of which the agency was aware; (2) where evidence comes out after the agency's decision is made that would affect the result; (3) where the agency either withheld or failed to consider important information that was not available to the objectors at the time of the administrative proceedings, whether by reason of bad faith or otherwise; and (4) where the court needs expert help in understanding the record that was compiled. Transcript of April 27, 2005 hearing, at pages 7-8, 16.[5]

---

[5] By this motion plaintiffs are not seeking to supplement the Administrative Record. Plaintiffs anticipate discussing such an application with the Court at the conference scheduled for

The information that plaintiffs seek to have Brown admit is within the above parameters. The information should be deemed to have been available to NASA and DOE, and NASA and DOE should be deemed to have been aware of it, by reason of the fact that NASA and DOE delegated the preparation of the Draft EA to Brown and Brown possessed the information. NASA and DOE were obligated under NEPA, apart from their obligation to take a "hard look" at the environmental consequences of the proposed Life Sciences Building project, Kleppe v. Sierra Club, 427 U.S. 390, 410 n. 21 (1976), to verify the information that Brown included in the Draft EA. 40 CFR § 1506.5(a)-(b) (2003); cf. City of Waltham v. U.S. Postal Service, 786 F.Supp. 105, 116-117 (D.Mass. 1992) (the administrative record consists of all documents and materials directly or indirectly considered by the agency), aff'd, 11 F.3d 235 (1st Cir. 1993). Thus even prior to receiving the written objections that members of the public submitted to NASA and DOE following the publication of the Draft EA, NASA and DOE should have known that Brown's interactions with the public had been materially different from Lizabeth Montgomery's May 19, 2003 understanding of those interactions quoted above, the latter of which were the basis of NASA's and DOE's anticipatory decision not to honor any requests by the public for an extension of the comment period for the Draft EA.[6]

Once members of the public submitted their written comments regarding the Draft EA to NASA and DOE and objected to defendants' failure to disclose the environmental reports and other related environmental information prior to the publication of the Draft EA, NASA and DOE had actual knowledge that Lizabeth Montgomery's May 19, 2003 understanding had been

---

October 31, 2005.

6 As early as May 3, 2002, in connection with the review of the Life Sciences Building project pursuant to Section 106 of the National Historic Preservation Act that preceded and later concluded together with this NEPA review, plaintiff College Hill Neighborhood Association advised NASA in writing that Brown and NASA were not adequately including members of the public in the discussions about the Life Sciences Building project (AR 47 [0283-0284]).

incorrect. NASA and DOE nevertheless failed to remedy that incorrect understanding or seek to include that adverse information in the Final EA or the Administrative Record.

Conclusion

For the reasons set forth herein, the Court should order Brown to provide answers to the requests for admissions described above.

Dated: October 12, 2005

William G. Touret/Pro Se
11 South Angell Street #264
Providence, RI 02906-5206
Tel. (800) 345-0080
Fax (401) 831-5329

J. WILLIAM W. HARSCH/Bar No. 3688
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. (401) 454-4466
Fax (401) 351-3914

Attorney for Plaintiffs Thomas A. Bennett, William G. Black, Eileen F. Rosenberg-Black, Antoinette Breed, Allyn Copp, Ronald A. Dwight, Pamela Hext Dwight, G. Dale Dulgarian, as he is Trustee for KSD Trust, Virginia G. Riggs, Yvonne G. Shilling, and College Hill Neighborhood Association

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of October, 2005, I caused a copy of the foregoing to be hand-delivered to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK
& SHEEHAN
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Beverly E. Ledbetter, Esq.
Vice President and
General Counsel
Brown University
110 South Main Street
Providence, RI 02903

William G. Touret

**Exhibit A**

**DEFENDANT BROWN UNIVERSITY'S OBJECTIONS TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSIONS TO DEFENDANT BROWN UNIVERSITY**

Pursuant to Rules 26 and 36 of the Federal Court Rules of Civil Procedure and Rule 13 of the Local Rules of the U.S. District Court, Defendant Brown University hereby objects to the Plaintiffs' First Request for Admissions to Defendant Brown University (dated July 22, 2005) (the "Requests") as follows:

**GENERAL OBJECTIONS**

1. Brown University objects to the Requests to the extent they call for any information and/or document that is privileged, that was prepared in anticipation of litigation or for trial, that otherwise constitutes work product, or that is otherwise immune from discovery. Inadvertent disclosure of any such information and/or document shall not constitute a waiver of any privilege or documents or information, and shall not waive the right of Brown University to object to the use of any such document or information contained therein during this action or in any other proceeding.

2. Brown University objects to the Definitions set forth in the Requests to the extent they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure.

3. Brown University objects to the Requests to the extent they purport to seek admissions and/or information beyond that permitted by the Court at the April 27, 2005 hearing on Plaintiffs' Motion to Amend (the "Court's Ruling"). At that hearing, the Court ruled that discovery would be limited to the "very narrow questions" of whether one of the four exceptions to the record rule applies.[1] As set forth in the Court's Ruling, the four exceptions are the following: (1) the record is incomplete (i.e., the agency considered information that was not included in the record (i.e., secret information) or there was adverse information presented to the agency that was not forwarded as part of the record); (2) evidence comes to light after the agency decision is made that

[1] Transcript of Hearing on Plaintiffs' Motion for Leave to File Amended Complaint (April 27, 2005) ("Hearing Tr.") at p. 15.

was neither known to nor available to the parties and demonstrates that the risks were greater than believed; (3) the agency acted in bad faith (i.e., there was evidence available to the agency, but not the objectors, that the agency either withheld or failed to consider); and (4) the case involves a "very technical matter" and the Court "needs" expert help in understanding the record.[2]

4. Brown University objects to the Requests to the extent they purport to seek admissions and/or information concerning whether Brown University allegedly provided, or failed to provide, certain information to one or more Plaintiffs at certain specified times. Such admissions and/or information do not fall within the scope of the Court's Ruling. Such admissions and/or information are not reasonably calculated to lead to the discovery of admissible evidence concerning whether, inter alia, specific information is contained in the administrative record and/or whether specific information should be included in the administrative record.

5. Brown University objects to the Requests to the extent they purport to seek admissions that NASA and/or the DOE provided, or failed to provide, certain information to one or more Plaintiffs at certain specified times. Such admissions do not fall within the scope of the Court's Ruling. Such admissions are not reasonably calculated to lead to the discovery of admissible evidence concerning whether, inter alia, the referenced information is contained in the administrative record and/or whether the referenced information should be included in the administrative record.

## SPECIFIC OBJECTIONS

Objection to Request No. 8: See General Objections above. In particular, Brown University objects to Request No. 8 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered. Information that Brown University did or did not provide to the public is

[2] Hearing Tr. at pp. 7-9.

not germane to the determination of whether one or more of the exceptions to the "record rule" applies. See General Objection No. 4.

Objection to Request No. 10: See General Objections above. In particular, Brown University objects to Request No. 10 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal_agencies considered or should have considered. Information that Brown University did or did not provide to public is not germane to the determination of whether one or more of the exceptions to the "record rule" applies. See General Objection No. 4.

Objection to Request No. 11: See General Objections above. In particular, Brown University objects to Request No. 11 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered and/or should have considered. Information that NASA, DOE or Brown University did or did not provide to the public is not germane to the determination of whether one or more of the exceptions to the "record rule" applies. See General Objection Nos. 4 and 6.

Objection to Request No. 12: See General Objections above. In particular, Brown University objects to Request No. 12 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered and/or should have considered. Information that NASA, DOE or Brown University did or did not provide to the public is not germane to the determination of whether one or more of the exceptions to the "record rule" applies. See General Objection Nos. 4 and 6.

Objection to Request No. 13: See General Objections above. In particular, Brown University objects to Request No. 13 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered and/or should have considered. Information that NASA, DOE or Brown University did or did not provide to the public is not germane to the determination of whether one or more of the exceptions to the "record rule" applies. See General Objection Nos. 4 and 6.

Objection to Request No. 15: See General Objections above. In particular, Brown University objects to Request No. 15 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered. Communications between Plaintiffs and Brown University are not germane to the determination of whether one or more of the exceptions to the "record rule" applies.

Objection to Request No. 16: See General Objections above. In particular, Brown University objects to Request No. 16 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered. Communications between Plaintiffs and Brown University are not germane to the determination of whether one or more of the exceptions to the "record rule" applies.

Objection to Request No. 17: See General Objections above. In particular, Brown University objects to Request No. 17 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered.

Objection to Request No. 18: See General Objections above. In particular, Brown University objects to Request No. 18 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered.

Objection to Request No. 19: See General Objections above. In particular, Brown University objects to Request No. 19 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered. Communications between Plaintiffs and Brown University where the federal agencies were not involved are not germane to the determination of whether one or more of the exceptions to the "record rule" applies.

Objection to Request No. 20: See General Objections above. In particular, Brown University objects to Request No. 20 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered. Communications between Plaintiffs and Brown University where the federal agencies were not involved are not germane to the determination of whether one or more of the exceptions to the "record rule" applies.

Objection to Request No. 21: See General Objections above. In particular, Brown University objects to Request No. 21 as outside the scope of the Court's Ruling with respect to the limits on permissible discovery. See General Objection No. 3. The focus of the four exceptions to the "record rule" is on the information and documents that the federal agencies considered or should have considered. Communications between Plaintiffs and Brown University where the federal agencies were not involved are not germane to the determination of whether one or more of the exceptions to the "record rule" applies.