**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| WILLIAM G. TOURET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.,<br><br>Defendants. | CIVIL ACTION NO. 04-198T |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM DEFENDANT BROWN UNIVERSITY**

In its opposing brief, defendant Brown University ("Brown") contends that the admissions that plaintiffs seek to compel Brown to make here could not be "adverse" within the meaning of the first exception to the "record rule" (see Plaintiffs' Brief at 8) because plaintiffs did not have an explicit right to comment on the Draft EA.[1] Brown's argument is without merit. Although the CEQ regulations do not necessarily require public comment in every case before issuance of a Final EA and FONSI, the regulations require that "NEPA procedures must insure that environmental information is available to . . . citizens before decisions are made and before actions are taken. . . . The information must be of high quality. . . . public scrutiny [is] essential to implementing NEPA." 40 CFR § 1500.1(b) (2003); see also id. §§ 1500.1(a), (d) ("Federal

[1] In footnote 3 on page 4 of their brief, Brown also claims that plaintiffs concede that the RWDI Report, the "Submission to State Historic Preservation Officer (February 4, 2002), and the two Acentech Reports "were part of the draft and/or final EA put out by the agencies." To the contrary, the RWDI Report was only referenced and described briefly and inaccurately in the Draft EA and Final EA; certain of the information contained in the "Submission to State Historic Preservation Officer (February 4, 2002)" was described, inaccurately, in the Draft EA and Final EA; the Draft EA and Final EA described the conclusions of the two Acentech Reports inaccurately; and the Final EA stated that it had incorporated the two Acentech reports by reference. Neither the Draft EA nor Final EA was distributed with copies of any of those four reports.

agencies shall to the fullest extent vossible . . . Encourage and facilitate public involvement in decisions which affect the quality of the human environment" (emphasis added)), 1506.6(a)-(e), 1501.4(b) ("The agency shall involve . . . the public, to the extent practicable, in preparing [environmental] assessments"), 1500.3 (right of action available for non-trivial violations of CEQ regulations). The CEQ regulations are applicable to and are binding on all federal agencies. 40 CFR § 1500.3 (2003).

The authorities that Brown cites (Brown Brief at 4-5) are inapplicable for the additional reason that defendants elected, through Brown, to engage the public in meetings prior to the June 2,2003 publication of the Draft EA. Brown engaged the public in two well-publicized public meetings about the Life Sciences Building in the fall of 2001 and in several smaller meetings in 2002 and 2003. But in the course of those public meetings, Brown did not disclose the nature of the most serious potential environmental impacts that the Life Sciences Building would present and about which Brown possessed considerable information.

Stated another way, in the course of those meetings, Brown disclosed only selective facts that served to portray the proposed Life Sciences Building in a light favorable to Brown. At the same time, Brown withheld material facts within its possession (those at issue here) about the most serious potential environmental impacts that the Life Sciences Building presented that would have cast the proposed facility in an unfavorable light from an environmental perspective. Brown's presentations to the public about the potential impacts of the proposed facility in the pre-June 2,2003 period were thus materially incomplete and misleading.

Even if NEPA would have permitted defendants not to hold public meetings or otherwise engage the public prior to the release of a draft EA in a controversial review such as this, see 40 CFR § 1506.6(a), (b), (c)(1), (d) (2003) (favoring public input), having chosen to make representations to the public about the potential environmental impacts from the Life Sciences

Building, Brown had an obligation to make those disclosures and otherwise comply with NEPA's public participation requirements in good faith. See, e.g., Cunningham Preservation Committee v. FAA, 524 F.2d 241, 243 (1st Cir. 1975) (EIS must be compiled with objective good faith). Good faith required Brown to present material adverse facts about the project to the public and not just facts that might favor the project. And NEPA requires federal agencies to verify and be responsible for the actions of those parties, in this case Brown, to whom agencies delegate the preparation of an EA or EIS. 40 CFR § 1506.5(a), (b) (2003) ("If an agency permits an applicant to prepare an environmental assessment, the agency . . . shall make its own evaluation of the environmental issues and take responsibility for the scope and content of the environmental assessment"). Bad faith and other improper behavior by Brown and its consultant is thus chargeable to NASA and DOE.[2] Evidence of bad faith and improper behavior by Brown in the pre-June 2, 2003 period -- Brown's withholding of material adverse information from the public while it disclosed only material non-adverse information -- is thus within the accepted bad faith exception to the "record rule."

Such evidence of bad faith and improper behavior, which was plainly "adverse," thus also satisfies the first exception to the "record rule" (Plaintiffs' Brief at 8), which permits the supplementation of the Administrative Record with adverse information of which NASA and DOE were aware during the administrative review period. Plaintiffs advised NASA and DOE of Brown's non-disclosures at issue here in their comments to the Draft EA (see Plaintiffs' Brief at 8-10).

Lastly, NASA and DOE -- having relied on Brown's purportedly complete and even-handed pre-June 2, 2003 disclosures to the public as evidence of their compliance with their

---

2 There is consequently no merit to Brown's unsupported contention (page 3, footnote 2) that only bad faith or other improper conduct by NASA and DOE, and not bad faith by Brown, is relevant for purposes of the bad faith exception to the "record rule."

public participation obligations -- were required to describe those disclosures accurately and in good faith in the Draft EA and Final EA. But even after plaintiffs and other members of the public, in the comment period to the Draft EA objected to Brown's withholding of the information at issue here, there is no indication in the Final EA (see AR 113 [0788]) or Administrative Record that NASA or DOE attempted to verify what information Brown in fact had made available to the public prior to the June 2,2003 publication of the Draft EA nor did the Final EA or Administrative Record describe Brown's disclosure omissions in the pre-June 2, 2003 period. See 40 C.F.R § 1506(a), (b) (2003) ("If an agency requires an applicant to submit environmental information for use in an [environmental assessment], then the agency . . . shall independently verify the information submitted and shall be responsible for its accuracy"). That failure to verify, to the extent it was the result of bad faith or was otherwise improper (as it would appear to be here), would also satisfy the bad faith exception to the "record rule."

Brown suggests that it is enough that Administrative Record merely includes plaintiffs' claims that Brown withheld the information at issue here and that NASA and DOE unreasonably refused to extend the comment period for the Draft EA, without Brown admitting its non-disclosures (Brown Brief at 6-7). But like Final EA, the Administrative Record fails to contain any acknowledgement by NASA and DOE that Brown in fact withheld and refused to provide that material information or that NASA and DOE even attempted to verify plaintiffs' claims of non-disclosure by Brown. To that extent on these disclosure issues, the Administrative Record, like the Final EA, is incomplete and misleading. Those deficiencies would also appear to be the result of improper conduct -- the failure to verify -- by NASA and DOE.

If defendants want to argue that the non-disclosures at issue here were of no significance, they should have an opportunity to do so. But the Administrative Record should reflect accurately what transpired during the administrative review proceedings here and Brown

therefore must provide answers to plaintiffs' requests for admissions. Only then will the Court be able to determine the merits of plaintiffs' and defendants' contentions about the significance of those non-disclosures.

Conclusion

For the reasons set forth here and in plaintiffs' original memorandum, the Court should order Brown to provide answers to the requests for admissions at issue here.

Dated: October 26,2005

William G. Touret/Pro Se
11 South Angell Street #264
Providence, RI 02906-5206
Tel. (800) 345-0080
Fax (401) 831-5329

J. WILLIAM W. HARSCH/Bar No. 3688
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. (401) 454-4466
Fax (401) 351-3914

Attorney for Plaintiffs Thomas A. Bennett, William G. Black, Eileen F. Rosenberg-Black, Antoinette Breed, Allyn Copp, Ronald A. Dwight, Pamela Hext Dwight, G. Dale Dulgarian, as he is Trustee for KSD Trust, Virginia G. Riggs, Yvonne G. Shilling, and College Hill Neighborhood Association

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2005, I caused a copy of the foregoing to be hand-delivered to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK
& SHEEHAN
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Beverly E. Ledbetter, Esq.
Vice President and
General Counsel
Brown University
110 South Main Street
Providence, RI 02903

William G. Touret