**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| WILLIAM G. TOURET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.,<br><br>Defendants. | ) | CIVIL ACTION NO. 04-198T |

PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S
ORDER DENYING PLAINTIFFS' MOTION TO COMPEL
DISCOVERY FROM DEFENDANT BROWN UNIVERSITY

Plaintiffs hereby submit their objections pursuant to Rule 72(a), Fed.R.Civ.P., and 28 U.S.C. § 636(b)(1)(A) to the order dated November 21, 2005 by Magistrate Judge David L. Martin (the "Order"), denying plaintiffs' motion for an order compelling answers from defendant Brown University to plaintiffs' requests for admissions, on the ground that the Order is clearly erroneous and contrary to law.

The reasons why the Order is clearly erroneous and contrary to law are set forth in the accompanying memorandum.

Dated: December 1, 2005

William G. Touret/Pro Se
11 South Angell Street #264
Providence, RI 02906-5206
Tel. (800) 345-0080
Fax (401) 831-5329

J. William W. Harsch /cas

J. WILLIAM W. HARSCH/Bar No. 3688
CAROLYN A. MANNIS/Bar No. 4275
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. (401) 454-4466
Fax (401) 351-3914

Attorney for Plaintiffs Thomas A. Bennett, William G. Black, Eileen F. Rosenberg-Black, Antoinette Breed, Allyn Copp, Ronald A. Dwight, Pamela Hext Dwight, G. Dale Dulgarian, as he is Trustee for KSD Trust, Virginia G. Riggs, Yvonne G. Shilling, and College Hill Neighborhood Association

CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2005, I caused a copy of the foregoing to be hand-delivered to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Brown University
110 South Main Street
Providence, RI 02903

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Hon. David L. Martin
United States Magistrate Judge
U.S. District Court
Providence, RI 02903

William G. Touret

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| WILLIAM G. TOURET, et al., Plaintiffs, v. NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al., Defendants. | CIVIL ACTION NO. 04-198T |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANT BROWN UNIVERSITY

Plaintiffs submit this memorandum in support of their objections pursuant to Rule 72(a), Fed.R.Civ.P., and 28 U.S.C. § 636(b)(1)(A) to the order dated November 21, 2005 by Magistrate Judge David L. Martin (the "Order"), denying plaintiffs' motion for an order compelling answers from defendant Brown University ("Brown") to plaintiffs' requests for admissions. For the reasons stated below, the Order is clearly erroneous and contrary to law within the meaning of 28 U.S.C. § 636(b)(1)(A).

I. THE MAGISTRATE JUDGE'S ORDER SHOULD BE SET ASIDE AND PLAINTIFFS' MOTION GRANTED BECAUSE THE MAGISTRATE'S ORDER IS CLEARLY ERRONEOUS AND CONTRARY TO LAW

A. The Requested Admissions Meet the "Adverse" Standard

The adverse nature of the admissions plaintiffs seek from Brown arises from several related obligations that NEPA imposes on federal agencies. One is the obligation to ensure meaningful public involvement in the NEPA review process. See Plaintiffs' Reply Brief at 1-3.[1]

[1] To meet the "adverse information" exception to the "record rule," plaintiffs must make a *prima facie* showing. Fund for Animals v. Williams, 391 F.Supp.2d 191, 198 (D.D.C. 2005).

Such public scrutiny of the NEPA process is intended ultimately to ensure that federal agencies take the required "hard look" at potentially significant environmental impacts to the human environment *before* agencies proceed with a proposed action. See Fund for Animals v. Norton, 281 F.Supp.2d 209, 225-229 (D.D.C. 2003); Citizens for Responsible Area Growth v. Adams, 477 F. Supp. 994, 998-999 (D.N.H. 1979). Another is the obligation that NEPA imposes upon federal agencies to conduct NEPA reviews with objective good faith, and to take responsibility for and verify the work of private parties to whom federal agencies may delegate the preparation of an EA. Plaintiffs' Reply Brief at 1–3; 40 CFR § 1506.5(a), (b) (2003). Here, NASA and DOE delegated to Brown and its consultant the preparation of the Draft EA and Final EA (see, e.g., AR 86 [0456-460]).

In the roughly 18-month period between October 2001 and the publication of the Draft EA on or about June 2, 2003, Brown conducted meetings with the public about the proposed Life Sciences Building project -- which are listed in the Draft EA (AR 98 [0582, 0599-0602]) and Final EA (AR 113 [0762, 0779-0782, 0788]). NASA's and DOE's representatives did not meet with the public during that period. Plaintiffs allege that during that same period, Brown (and NASA and DOE) deliberately withheld from the public material information that would have revealed to the public the fact that activities to be conducted within the Life Sciences Building had the potential to impact significantly the health and safety of the public. Rather than reveal that information, however, Brown's representatives described the proposed facility to the public only in general terms and omitted discussion of those potentially significant environmental impacts -- especially as they related to air and noise emissions. During that same period, Brown's representatives also refused written and oral requests from the public for information about the proposed Life Sciences Building's potentially significant environmental impacts. NASA and DOE eventually made certain of that previously-withheld information available when

they released the Draft EA on June 2, 2003. Plaintiffs and other members of the public thereupon obtained from Brown by request -- during the 30-day comment period for the Draft EA -- certain of the reports about air and noise emissions to which the Draft EA referred and which Brown had been withholding for over one year.

The Magistrate Judge reasoned that because defendants did not have a formal obligation by statute or regulation to disclose information about the Life Sciences Building project to the public prior to the publication of the Draft EA, and since plaintiffs similarly did not have a formal right by statute or regulation to comment on the Draft EA, it was therefore not legally relevant that Brown refused to provide the public with the material information about potentially significant environmental impacts during the preceding 18-month period as plaintiffs allege (Order at 6-8).

But notwithstanding the fact that the public may not have had a formal right by statute or regulation to comment on the Draft EA, the public had a right under NEPA to meaningful scrutiny of the potential environmental impacts of the Life Sciences Building project before the proposed action here (construction of the Life Sciences Building) commenced. See 40 CFR § 1500.1(b)(2003): "NEPA procedures must ensure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. The information must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." (Emphasis added.) See also Fund for Animals v. Norton, 281 F.Supp.2d at 225-229 (failure to provide meaningful comment period for Draft EA rendered public participation improperly *pro forma*; agency thus failed to take required "hard look" at the environmental consequences of its proposed action);[2] Citizens for

---

[2] Plaintiffs brought the Fund for Animals v. Norton decision to the Magistrate Judge's attention at oral argument.

Responsible Area Growth v. Adams, 477 F. Supp. at 998 ("Section 102(2)(C) of NEPA provides a mandate of uncommon clarity. . . . As a practical matter, a threshold decision not to prepare an EIS may represent the last comprehensive environmental consideration a project receives. It is certainly the last opportunity for other agencies and the public to challenge the formal adequacy of environmental planning. The threshold determination, thus, is of profound importance.") (Emphasis added.)

Moreover, Brown, NASA, and DOE knew that the public would not have an opportunity to comment on the Draft EA or Final EA once the 30-day period for submitting comments with respect to the Draft EA concluded. At least as early as February 2003, NASA and DOE were aware that Brown intended to begin construction of the Life Sciences Building immediately upon the signing of the final Finding of No Significant Impact ("FONSI") (see Appendix to Plaintiffs' Memorandum in Support of Their Motion to Supplement the Administrative Record, filed November 21, 2005, Tab 32; AR 86 [0457-0458]).[3]

The absence of any opportunity for the public to comment on the Final EA after its issuance was all the more important here, because Brown knew, and NASA and DOE knew or should have known, that the information contained in the Draft EA about potentially significant environmental impacts was seriously flawed and was otherwise incomplete. That information was of anything but the "high quality" that 40 CFR § 1500.1(b) mandates. In their written objections to NASA and DOE during the comment period for the Draft EA, plaintiffs and other members of the public described the serious deficiencies in the Draft EA's treatment of the air and noise emission issues as well as the Draft EA's procedural infirmities (see generally AR 106

---

[3] Brown had originally anticipated that construction of the facility would begin in November 2001 (AR 30 [0064-0065]). In April 2003, one of Brown's representatives acknowledged to NASA that "We [Brown] are under tremendous pressure to get this thing [the Life Sciences Building construction] moving" (AR 86 [0459-0460]). These facts support

[0627-0630], AR 123 [0891-1084]). The Final EA did not correct those deficiencies, apparently at least in part because NASA and DOE did not independently consider the public's comments but instead delegated much of that obligation -- as well as the drafting of the Final EA -- to Brown and its consultant, in violation of 40 CFR § 1506.5(a), (b) (2003); see also Davis v. Mineta, 302 F.3d 1104, 1112-1113 (10th Cir. 2002).[4] And certain of those deficiencies in the Draft EA, as they related to the noise emission issues, remained obviously deficient in the Final EA. See Fund for Animals v. Norton, 281 F.Supp.2d at 227-229.[5]

The Magistrate Judge further concluded (Order at pages 5, 7) that it was sufficient that the Administrative Record contains only the objections that plaintiffs and other members of the public submitted during the comment period for the Draft EA -- to the effect that Brown, NASA, and DOE withheld and otherwise refused to disclose the information at issue here to the public during the 18-month period preceding the publication of the Draft EA. But NASA and DOE never directly addressed those objections in the Final EA, leaving the false impression in the Final EA and Administrative Record that the public participation period prior to the release of the Draft EA was without deficiency (see AR 113 [0788]). In the absence of the admissions plaintiffs seek here, in this respect the "record is so bare that it prevents effective judicial

---

plaintiffs' claim of predetermination, discussed below.

[4] Alliance to Protect Nantucket Sound, 398 F.3d 105, 115 (1st Cir. 2005) (Order at page 7) is distinguishable, in that no claim was made there that the federal agency deliberately withheld material information during the public participation process or that that the public participation process was otherwise *pro forma* as is alleged here.

[5] As is described in Plaintiffs' Memorandum in Support of Their Motion to Supplement the Administrative Record, filed November 21, 2005 ("Memorandum in Support of Motion to Supplement"), in the discussion for Tabs 5-9, pages 11-14, the Draft EA and Final EA misrepresented the conclusions and significance of the two Acentech noise emission reports that Brown commissioned. Furthermore, NASA and DOE apparently never reviewed or even obtained from Brown copies of those reports, see id., notwithstanding the detailed public criticism of the Draft EA's mischaracterizations of the conclusions of those two reports (e.g., AR 123 [0907-0911, 1037, 1040]). That memorandum also discusses certain of the serious deficiencies in the Draft EA's and Final EA's evaluations of the air emission impact issues

review" (see Order at 6, quoting Fund for Animals v. Williams, 391 F.Supp.2d at 198) -- defendants may later attempt to deny that Brown withheld the information at issue here.

For these reasons, evidence that Brown refused to disclose the material information at issue here for over one year despite specific requests for that information from the public, that NASA and DOE failed to verify that withholding despite objections from the public, that the material once finally disclosed was plainly inadequate, and that the outcome of the NEPA review was predetermined (see discussion below), supports plaintiffs' claim that the public participation process here was merely *pro forma*, Fund for Animals v. Norton, 281 F.Supp.2d at 225-229, and that NASA and DOE thereby failed to take the required "hard look" at the potential environmental impacts of the Life Sciences Building project. Id.; Davis v. Mineta, 302 F.3d at 1113 (*pro forma* public review); Fund for Animals v. Williams, 391 F.Supp.2d at 197 ("The agency "may not skew the record in its favor by excluding pertinent but unfavorable information...."). Plaintiffs are entitled to obtain that "adverse" evidence through discovery. Fed.R.Civ.P. 26(b)(1).

B. The Requested Admissions Meet the "Bad Faith/Improper Conduct" Standard

The information that plaintiffs seek to have Brown admit would also provide additional proof in support of plaintiffs' broader claims of predetermination, intentional frustration of the public participation process, and absence of objective good faith on the part of Brown, NASA, and DOE. Plaintiffs allege that that Brown, NASA, and DOE improperly predetermined the outcome of this NEPA review to avoid having to prepare an Environmental Impact Statement (EIS).[6] Plaintiffs further allege that that Brown's (and NASA's and DOE's) withholding of

---

(Memorandum in Support of Motion to Supplement, discussion for Tabs 1-4, pages 6-11).

[6] Predetermination under NEPA is improper. See, e.g., 40 CFR §§ 1502.2(g); 1502.5 (2003); Davis v. Mineta, 302 F.3d at 1112-113; Washington County v. U.S. Department of the Navy, 357 F.Supp.2d 861, 874-75 (E.D.N.C.) (predetermination is inconsistent with NEPA's

material information from the public concerning potentially significant impacts from the Life Sciences Building, prior to the publication of the Draft EA, was intended to prevent the public from timely learning about the true nature those potentially significant environmental impacts, ultimately for the purpose of improperly circumventing the EIS process.[7]

The Magistrate Judge stated -- notwithstanding 40 CFR § 1506.5(a), (b) (2003), which provides that federal agencies are responsible for the scope and content of an EA prepared by a private party such as Brown and have a duty independently to verify material prepared by such private parties -- that he was "not satisfied that the alleged bad faith on the part of Brown can be charged to the agencies" (Order at 6). In that regard, the Court quoted from Fund for Animals v. Williams, 391 F.Supp.2d at 198, for the proposition that bad faith or improper behavior on the part of a federal agency must be shown to meet the "bad faith" exception to the "record rule." But Fund for Animals v. Williams is inapposite in that regard, because it did not involve a federal agency that had delegated the preparation of an EA to a private party, as is the case here, nor was wrongdoing or bad faith alleged against a non-agency party for whose conduct the defendant federal agency was alleged to be responsible.

In Davis v. Mineta, 302 F.3d 1104, the federal agency was held responsible for an improper agreement entered into by a non-party consultant that prepared an EA for the agency. The court held that the federal agency was responsible for the agreement (which reflected predetermination by the consultant), because the federal agency was "involved throughout the NEPA process and knew of the agreement." Id. at 1112-1113. Additionally, the court found that the federal agency was responsible because it had failed to conduct a sufficient independent

---

objective good faith and "hard look" requirements), injunction modified, 422 F.3d 174 (4th Cir. 2005); Fund for Animals v. Norton, 281 F.Supp.2d at 229-230.

[7] See plaintiffs' Proposed Amended Complaint dated February 28, 2005, at ¶¶ 172-175 (predetermination of result), ¶¶ 159-165 (frustration of public participation process).

review of the consultant's actions to insulate the agency from the effects of the improper bias reflected by the consultant's agreement. Id. at 1112-1113. Here, NASA and DOE were similarly "involved throughout the NEPA process" (see, e.g., AR 86 [0456-0460], AR 98 [0586], AR 113 [0766]) and knew of Brown's withholding of the material information from the public not later than the comment period for the Draft EA, when NASA and DOE received written objections from plaintiffs and other members of the public that described defendants' failure previously to disclose the information at issue here (see, e.g., AR 106 [0628], AR 123 [0891-0892, 0893, 0897-900, 1037, 1039).

Furthermore, also as in Davis v. Mineta and as stated above, NASA and DOE failed to make an independent investigation (or apparently *any* investigation) of the objections by plaintiffs and other members of the public to the extended withholding of material information by Brown prior to the publication of the Draft EA, or the purported adequacy of the prior public participation process upon which NASA and DOE relied in deciding not to extend the comment period for the Draft EA. The admissions plaintiffs seek thus support plaintiffs' broader claims of improper conduct on Brown's, NASA's, and DOE's parts and are also "adverse" within the meaning of the "record rule" to that additional extent.

## II. IN THE ALTERNATIVE, THE COURT SHOULD CONSIDER THESE OBJECTIONS IN CONJUNCTION WITH PLAINTIFFS' PENDING MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

If the Court is not disposed to set aside the order of the Magistrate Judge at this time, then plaintiffs urge the Court to defer decision on these objections until the Court has had an opportunity to review the materials that plaintiffs submitted on November 21, 2005 in support of their Motion to Supplement the Administrative Record. Those materials include evidence that provides substantial additional support for plaintiffs' claims of frustration of the public participation process and predetermination, as well as plaintiffs' claims that NASA and DOE

failed to take the required "hard look" at the significance of the potential impacts from air and noise emissions and otherwise failed to act with the required objective good faith. Those materials augment the Administrative Record substantially, and, once plaintiffs' motion to supplement is fully briefed, would provide the Court with a far superior factual record for the disposition of these objections. Consideration of these objections with plaintiffs' motion to supplement the Administrative Record would also avoid the possibility of the Court reaching inconsistent results with respect to these objections and plaintiffs' motion to supplement.

## CONCLUSION

The spectacle here of Brown's (and NASA's and DOE's) *refusing* to provide a concerned public with highly significant (albeit incomplete) information for an 18-month period, only to release that information abruptly to the public thereafter for a brief 30-day comment period in the summer of 2003 as part of the release of a 66-page Draft EA together with additional separate technical reports, with construction of the Life Sciences Building already set to proceed and defendants' offering no confirmation of or explanation for that very sharp behavior, is plainly inconsistent with NEPA's spirit if not its letter, 40 CFR § 1500.1(a) (NEPA's regulations require federal agencies to adhere to NEPA's letter and spirit), (b), 1500.2(d) (2003), as well as NEPA's requirement of objective good faith, and thereby rendered the public participation process here at best *pro forma*. Davis v. Mineta, 302 F.3d at 1113; Fund for Animals v. Norton, 281 F.Supp.2d at 225-229. Because plaintiffs' requests for admissions seek answers that confirm and explain that improper behavior, those answers are also "adverse," well within the applicable exceptions to the "record rule," and should be ordered produced. See Sierra Club v. Marsh, 769 F.2d 868, 871 (1st Cir. 1985) (the ultimate question for a reviewing court is whether the agency action, in the context of the record, is too unreasonable for the law to permit it to stand).

William G. Touret/Pro Se
11 South Angell Street #264
Providence, RI 02906-5206
Tel. (800) 345-0080
Fax (401) 831-5329

J. WILLIAM W. HARSCH/Bar No. 3688
CAROLYN A. MANNIS/Bar No. 4275
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. (401) 454-4466
Fax (401) 351-3914

Attorneys for Plaintiffs Thomas A. Bennett, William G. Black, Eileen F. Rosenberg-Black, Antoinette Breed, Allyn Copp, Ronald A. Dwight, Pamela Hext Dwight, G. Dale Dulgarian, as he is Trustee for KSD Trust, Virginia G. Riggs, Yvonne G. Shilling, and College Hill Neighborhood Association

CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2005, I caused a copy of the foregoing to be hand-delivered to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Brown University
110 South Main Street
Providence, RI 02903

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Hon. David L. Martin
United States Magistrate Judge
U.S. District Court
Providence, RI 02903

William G. Touret