UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WILLIAM G. TOURET, THOMAS A. BENNETT, WILLIAM G. BLACK, EILEEN F. ROSENGERG-BLACK, ANTIONETTE BREED ALLYN COPP, RONALD A. DWIGHT, G. DALE DULGARIAN, as he is Trustee for KSD TRUST, VIRGINIA G. RIGGS, MATTHEW L. SHILLING, YVONNE G. SHILLING, and COLLEGE HILL NEIGHBORHOOD ASSOCIATION, Plaintiffs | ) | |
| v. | ) | C.A. No. 04-198T |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; DEPARTMENT OF ENERGY and BROWN UNIVERSITY, Defendants. | ) | |

**DEFENDANT BROWN UNIVERISTY'S OPPOSITON TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Defendant Brown University hereby submits its Opposition to Plaintiffs' Motion to Supplement the Administrative Record. As more fully detailed in the accompanying Memorandum of Law, Plaintiffs fail to demonstrate that any of the documents they offer fall within any recognized exception to the "record rule" that applies in agency administrative appeals such as the present case. Therefore, this Court should deny Plaintiffs' Motion to Supplement the Administrative Record.

BROWN UNIVERSITY
By its Attorneys,

JOSEPH AVANZATO (#4774)
KRISTEN W. SHERMAN (#5595)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel. (401) 274-7200
Fax (401) 351-4607

and

BEVERLY E. LEDBETTER, ESQ. (#2208)
General Counsel
Office of the General Counsel
Brown University
110 South Main Street
Providence, RI
Tel: (401) 863-9900
Fax: (401) 863-1199

Dated: December 19, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the within was hand delivered on this 19th day of December, 2005, to J. William Harsch, Esq., 170 Westminster Street, Suite 800, Providence, Rhode Island and Robin Feder, Esq., United States Attorney's Office, District of Rhode Island, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903 and William G. Touret, 11 South Angell Street #264, Providence, Rhode Island 02906.

365387_1.DOC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WILLIAM G. TOURET, THOMAS A. BENNETT, WILLIAM G. BLACK, EILEEN F. ROSENGERG-BLACK, ANTIONETTE BREED ALLYN COPP, RONALD A. DWIGHT, G. DALE DULGARIAN, as he is Trustee for KSD TRUST, VIRGINIA G. RIGGS, MATTHEW L. SHILLING, YVONNE G. SHILLING, and COLLEGE HILL NEIGHBORHOOD ASSOCIATION, | ) | |
| Plaintiffs | ) | |
| v. | ) | C.A. No. 04-198T |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; DEPARTMENT OF ENERGY and BROWN UNIVERSITY, | ) | |
| Defendants. | ) | |

**DEFENDANT BROWN UNIVERSITY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Defendant Brown University hereby submits this Memorandum of Law in support of its Opposition to Plaintiffs' Motion to Supplement the Administrative Record ("Motion to Supplement").

Plaintiffs in this case seek to supplement the administrative record that was before Defendants National Aeronautics and Space Administration ("NASA") and Department of Energy ("DOE") (collectively, the "Federal Agencies") at the time that they made a decision not to do an Environmental Impact Statement ("EIS") for the proposed Life Sciences Building at Brown University (the "Project"). Notwithstanding the limited scope of judicial review in appeals such as this one under the federal Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*, and the "record rule," Plaintiffs argue that there are exceptional circumstances present that warrant adding an additional 82 documents to the administrative record. Specifically, Plaintiffs

argue that the documents fall within the exceptions to the "record rule" for situations where (1) the administrative record is not complete because it does not include all information made available to or considered by the agency (i.e., secret information) or the record fails to include adverse information of which the agency was aware (Tabs 1-82); (2) there is a strong showing of improper behavior or bad faith by the agency decision makers (Tabs 1-82); and (3) evidence becomes available after the agency decision that would affect the result (Tabs 77-82). See Plaintiffs' Memorandum in Support of Their Motion to Supplement the Administrative Record ("Plaintiffs' Memorandum") at pp. 3-5 and n.5. [1]

As more fully set forth below, none of the 82 documents falls within any recognized exception to the "record rule." With respect to the first exception, most of the documents do not meet even the first of the governing three-part test, which requires the documents in dispute to have been known to the Federal Agencies at the time of their decision not to do an EIS. As for the remainder of the documents, they are neither directly related to, nor adverse to, the Federal Agencies' decision not to require an EIS for the Project.

With regard to the second exception, Plaintiffs' speculation regarding "secret agreements" and predetermined outcomes falls far short of carrying their heavy burden of demonstrating bad faith. With respect to many of the documents, Plaintiffs erroneously attempt to impute the alleged bad faith of Brown University and/or Battelle Memorial Institute ("Battelle") to the Federal Agencies – an approach unsupported by law and previously rejected by this Court. As for those documents that Plaintiffs claim to show bad faith of the Federal Agencies, for many of the reasons that those documents are not "adverse" under the first exception, they cannot support a finding of bad faith.

---

[1] While there may be other exceptions to the "record rule," Plaintiffs only argue the three exceptions listed. See Plaintiffs' Memorandum at p. 5 and n.5.

With respect to the handful of documents that Plaintiffs attempt to squeeze into the third exception, none of them contains evidence that became available after the final EA and that contradicts any prediction made by NASA and/or DOE. Therefore, this Court should deny Plaintiffs' Motion to Supplement.

## LEGAL ARGUMENT

As Plaintiffs concede, this Court's review of the Federal Agencies' decision not to prepare an EIS under the Administrative Procedures Act, 5 U.S.C. § 706, involves a very limited inquiry. Plaintiffs' Memorandum in Support of Their Motion to Supplement the Administrative Record ("Plaintiffs' Memorandum") at pp. 1-2. Indeed, the decision of NASA and DOE not to do an EIS for the Project is entitled to a presumption of validity unless it can be shown that the decision was arbitrary and capricious. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413 (1971); Associated Fisheries of Maine, Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997). This analysis requires the Court to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Volpe, 401 U.S. at 416 (citation omitted). Therefore, while the Court must make a careful analysis of the facts, even if the Court disagrees with the Federal Agencies' conclusions, it cannot substitute its judgment for that of NASA and DOE. Id. In sum, the Court's only task is to ascertain whether the Federal Agencies took the requisite "hard look" at the environmental consequences of the project. Kleppe v. Sierra Club, 427 U.S. 390, 409 n.21 (1976) (citing Natural Resources Defense Council v. Morton, 458 F.2d 827, 838 (1972)).

Plaintiffs further agree that, in reviewing the decision of NASA and DOE not to do an EIS, this Court is ordinarily confined, under the so-called "record rule," to looking at the administrative record as it existed at the time of the decision and "not some new record made

initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973); Olsen v. United States, 414 F.3d 144, 155 (1st Cir. 2005); see Plaintiffs' Memorandum at p. 3. The federal courts have remarked that the administrative record compiled by an agency enjoys a presumption that it was properly designated. See Fund for Animals v. Williams, 391 F. Supp. 2nd.191, 197 (D.D.C. 2005) (citations omitted). However, parties may be permitted to supplement the administrative record in exceptional circumstances. Id. at 197. Those exceptional circumstances include those situations in which the administrative record is not complete because it does not include all information made available to or considered by the agency (i.e., secret information) or the record fails to include adverse information of which the agency was aware. See Id. ("Supplementation may be necessary where the agency excludes information adverse to its position from the administrative record."). Alternatively, supplementation of the record may be allowed where the party proposing supplementation makes a "strong showing of bad faith or improper behavior." Volpe, 401 U.S. at 420; see Town of Norfolk v. United States Army Corps of Engineers, 968 F.2d 1438, 1458-59 (1st Cir. 1992). Finally, another exception to the "record rule" exists where "evidence either confirming or denying agency predictions made in the original decision subsequently becomes available." Strahan v. Linnon, 966 F. Supp. 111, 114 (D. Mass. 1997).

As more fully set forth below, Plaintiffs have failed to demonstrate that any of the subject documents should be added to the administrative record. As a result, this Court should deny Plaintiffs' Motion to Supplement.

## I. PLAINTIFFS FAIL TO MAKE A *PRIMA FACIE* DEMONSTRATION THAT ANY OF THE DOCUMENTS FALL WITHIN THE FIRST EXCEPTION TO THE "RECORD RULE"

Plaintiffs allege that all of the documents they offer fall within the first exception to the "record rule." Plaintiffs' Memorandum at p. 5 and n.5. However, to establish that the first

exception applies, Plaintiffs must make a *prima facie* showing that the documents to be added (1) were known to NASA and/or DOE at the time they decided not to do an EIS for the Project; (2) directly relate to the Federal Agencies' decision not to do an EIS; and (3) are adverse to the Federal Agencies' decision. See Williams, 391 F. Supp. 2d at 198 (citing Public Citizen v. Heckler, 653 F. Supp. 1229, 1237 (D.D.C. 1984)).

Plaintiffs' attempts to pigeonhole the documents into this narrow exception fail for several principal reasons. First, this Court need look no further than the first criteria above to determine that the first exception does not apply. There is no evidence that either NASA and/or DOE were aware of most of the documents in dispute when they decided not to do an EIS.[2] Many of the documents are either internal Brown University documents and communications or communications between Brown University and Battelle that were not copied or otherwise provided to NASA and/or DOE (Tabs 1, 3, 7, 8, 9, 14, 30, 33, 34, 35, 36, 37, 40, 41, 42, 46, 47, 49, 64 and 66). It is even less likely, and Plaintiffs have offered no evidence, that NASA and/or DOE knew of local newspaper articles or information appearing on the internet generally that Plaintiffs propose to add to the record. See Tabs 12, 13, 29, 54, 74, 75, 76, 77, 78 and 82. Similarly, it belies belief that NASA and/or DOE should be charged with having knowledge regarding the contents of individuals' personal handwritten notes regarding various meetings or conversations that, in most cases, occurred years before the final EA and FONSI. See Tabs 23, 42, 53, 55, 56, 57, 62, 65, 71 and 79.

[2] This Court should decline Plaintiffs' invitation to impute awareness by Brown University and/or Battelle to the Federal Agencies. None of the authorities cited by Plaintiffs supports the global conclusion that documents known to an applicant or its consultants will be deemed to have been within the knowledge of the agency for purposes of the first exception to the "record rule." Indeed, this Court's ultimate task is to review and analyze what the *agencies* knew and decided based on the administrative record. However, should the Court determine that knowledge of Brown University and/or Battelle is *ipso facto* knowledge of the Federal Agencies, Brown University requests permission to supplement this memorandum.

Also, Brown University's communications with Plaintiffs or third parties, absent some evidence that NASA and/or DOE received copies, cannot be said to have come within the knowledge of the Federal Agencies. For example, charging NASA and/or DOE with knowledge of communications between Brown University and Plaintiffs alone also requires pure speculation. See Tabs 2, 58, 61 and 63.

Equally troublesome is Plaintiffs' argument that NASA and/or DOE were somehow aware of (1) Brown University's grant applications to other federal agencies from 2001 (Tabs 10 and 11); (2) Brown University's communications with the Rhode Island Historic Preservation & Heritage Commission ("RIHP & HC") in 2001 and 2002 (Tabs 15, 59 and 60); (3) the terms of Brown University's contract with Battelle (Tabs 38 and 39); (4) Plaintiffs' communications with the Rhode RIHP & HC where no parties were copied (Tabs 67, 68, 70, 72 and 73). It is also fundamental that documents that post-date the final EA and FONSI (August 2003) cannot be said to have been known to NASA and/or DOE at the time that they made their decision. See Tabs 74-75 (2005 internet printouts), 77-78 (10/03 and 4/05 newspaper articles), 79 (Touret 6/05 meeting notes) and 80-82 (2005 deposition transcripts from the present litigation).

The remainder of the documents offered by Plaintiffs (Tabs 4, 16-22, 24-28, 31-32, 43-45, 48, 50-52 and 69), while arguably within the knowledge of the Federal Agencies, fail to meet the second and/or third criteria necessary to establish the first exception to the "record rule." As detailed individually below, Plaintiffs fail to present anything more than speculation to support their claims that the documents relate directly to the Federal Agencies' decision not to do an EIA and/or are adverse to that decision. Williams, 391 F. Supp. 2d at 198 (citing Public Citizen v. Heckler, 653 F. Supp. at 1237.

A. Tab 4 – Air Emissions

Plaintiffs should not be permitted to add the e-mail at Tab 4 because it is not directly related to, or adverse to, the Federal Agencies' decision not to do an EIS for the Project. The e-mail at Tab 4 at most demonstrates that there was some confusion regarding whether the Project would require a Rhode Island Department of Environmental Management ("RIDEM") air toxics permit. Plaintiffs do *not* appear to argue that the administrative record contains false or misleading information regarding the nature and extent of existing and anticipated air toxics emissions from the Project. Indeed, the record is replete with specifics regarding existing and proposed air emissions. See AR 0084-0230, 0536-0602. Rather, Plaintiffs' complaint is that the EA contained an erroneous statement regarding the need for a RIDEM air toxics permit.

Even assuming that the EA contained an erroneous conclusion about the need for an air toxics permit or the lack thereof, there is no evidence that such a conclusion was "directly related" to the decision not to do an EIS, or otherwise adverse. On the contrary, the existing record indicates that it would have been difficult for anyone at the time of the final EA to adequately predict the need for such a permit. As set forth in its July 17, 2003 letter to NASA (AR 0705-0707), RIDEM's air toxics regulations were being amended at the time and it was unclear what the threshold for triggering the need for a permit would ultimately be. See AR 0705.

Moreover, the document at Tab 4 cannot be deemed adverse because Plaintiffs offer no evidence that Brown University would not have been able to obtain any required air toxics permit. On the contrary, in its July 17, 2003 letter to NASA, RIDEM stated that it was already reviewing an Air Toxics Permit for Brown University, which permit could "be expanded to

include other air toxics emitted by [the Project]." See AR 0706. Therefore, this Court should decline to add the document at Tab 4 to the record under the first exception to the "record rule."

B. Tabs 16, 20, 27- 28, 31-32, 43-44 and 52 – Predetermination to Issue an EA/FONSI

Plaintiffs also should not be permitted to add the documents allegedly showing improper predetermination of Brown University and/or the Federal Agencies to complete the NEPA process with an EA and FONSI rather than an EIS (Tabs 16, 20, 27- 28, 31-32, 43-44 and 52) because those documents are neither directly related to, nor adverse to, the ultimate decision of the Federal Agencies not to do an EIS for the Project. Brown University submits that the parties' focus on issuing an EA (rather than an EIS) is consistent with NEPA. Indeed, under NEPA, the initial focus is always directed at doing an EA. The purpose of an EA is to help the agencies decide whether an EIS is needed. 40 C.F.R. § 1508.9(a)(1) (defining an EA as a concise document that provides sufficient evidence and analysis to determine whether an EIS or a FONSI should issue); see Sierra Club v. Marsh, 769 F.2d 868, 875 (1st Cir. 1985). As this Court has noted, it is a "means for determining whether an EIS is required." New England Naturist Association, Inc. v. Larsen, 692 F. Supp. 75 (D.R.I. 1988). Therefore, until an EA is done, there cannot reasonably be any discussion regarding the need for, or scope of, an EIS. Furthermore, if as here the results of the EA indicate that there would be no significant impact, there would be no need for further analysis. Accordingly, the failure of the parties to discuss doing an EIS does not show improper predetermination of result, but rather, compliance with the letter and spirit of NEPA. Indeed, in this case, there is no evidence in the record (or in any of the documents with which Plaintiffs seek to supplement the record) that the Federal Agencies had made any commitment of time or resources that would have prevented them from making an objective

determination as to whether an EIS was required. Therefore, Plaintiffs' proffered documents constitute nothing more than speculation.

Brown University further submits that even if the documents can be interpreted to reflect a general desire of Defendants to issue an EA and FONSI (rather than an EIS) (Tabs 16, 27, 28, 31-32, 43-44 and 52) and a need to complete the EA as expeditiously as possible (Tabs 20 and 52), those circumstances do not warrant a finding that the documents are adverse to the Defendants. The ultimate issue for the Court is whether the preparation of an EA and FONSI was arbitrary and capricious. If the Court finds that the decision to do only an EA and FONSI was not arbitrary and capricious, then a general desire for, or even a predisposition toward, issuing an EA would be irrelevant. Therefore, the documents at Tabs 16, 20, 27- 28, 31-32, 43-44 and 52 should not be added to the administrative record under the first exception to the "record rule."

C. Tabs 16, 18-20, 22 and 50-51-Predetermination to Limit NASA's Role and Delegation of Duties to Brown University and Battelle

To the extent that certain documents (Tabs 16, 18-20, 22 and 50-51) allegedly suggest that the Federal Agencies either sought to have limited involvement and/or have Brown University and Battelle take responsibility for part of the EA drafting, they do not constitute any improper predetermination and cannot be said to be directly related to, or adverse to, the ultimate decision of the Federal Agencies not to do an EIS for the Project. Delegation to a private consultant is not a violation of NEPA. Friends of Endangered Species, Inc. v. Jantzen, 589 F. Supp. 113, 119 (N.D. Cal. 1984). Indeed, the CEQ NEPA regulations expressly permit an applicant to prepare an environmental assessment. 40 C.F.R. § 1506.5(b). All that is required is that the agency "make its own evaluation of the environmental issues and take responsibility for the scope and content of the environmental assessment." Id.

To establish an improper delegation by the Federal Agencies, Plaintiffs would have to establish that they actually disregarded their role by failing to review adequately Brown University's and/or Battelle's work. Jantzen, 589 F. Supp. at 119. In this case, it can scarcely be said that the Federal Agencies abdicated their responsibilities with respect to the draft and final EA. Indeed, the very documents proffered by Plaintiffs (Tab 28) indicate that the Federal Agencies planned to revise the draft EA "as necessary in order to independently evaluate and verify the accuracy of the environmental data, information and analyses received." Furthermore, Plaintiffs' own documents show that Battelle was not even hired to assist on the EA until May of 2003 (Tabs 38-39) – after the draft EA was issued. Moreover, even a cursory review of the administrative record demonstrates that NASA and DOE were actively and substantively participating in the preparation of the draft and final EA reports. See AR 0428-0449 (DOE comments on draft EA); AR 0450-0454 (NASA and DOE comments on draft EA); AR 0456-60 (correspondence indicating meeting in Providence with Federal Agencies to discuss draft EA); AR 0516 (DOE comments on draft EA); AR 0517-0529 (pre-issuance correspondence with Federal Agencies regarding substance of draft EA). Therefore, this Court should conclude that the documents at Tabs 16, 18-20, 22 and 50-51 do not fall within the first exception to the "record rule."

D. Tabs 17, 21, 24-26 and 28 – Predetermination in the National Historic Preservation Act Review Process

Plaintiffs' proffered documents relating to the alleged predetermination of the Section 106 process (Tabs 17 and 21) and Plaintiffs' request for "consulting party" status (Tabs 17, 21, 24-26 and 28) are also not directly related to the Federal Agencies' decision not to do an EIS and are not adverse to that determination. Even assuming *arguendo* that the Federal Agencies were predisposed to conclude the review process under Section 106 of the National

Historic Preservation Act with a Memorandum of Agreement as they did (AR 0791-0797), Plaintiffs fail to present any evidence in their proffered documents that the process was flawed or otherwise failed to comport with the requirements of law.

Similarly, with respect to their denial of "consulting party" status, Plaintiffs fail entirely to argue that they had any legal right to such status. On the contrary, the governing regulations state that the following individuals and entities are required or "entitled to" participate in the process: (1) the state historic preservation officer; (2) certain Indian tribes and Native Hawaiian organizations; (3) local government representatives; and (4) applicants. 36 C.F.R. § 800.2 (c)(1)-(4). In contrast, the regulations state that "certain individuals and organizations with a demonstrated interest in the undertaking *may* participate as consulting parties." 36 C.F.R. § 800.2(c)(5) (emphasis added). In short, nothing in the regulations requires an agency to grant consulting party status to such individuals. Id.

Moreover, Plaintiffs fail entirely to demonstrate how their denial of "consulting party" status had an adverse impact on the Section 106 review process. The administrative record makes clear that, notwithstanding the absence of formal "consulting party" status, Plaintiffs were actively involved and included in the Section 106 review process. NASA accorded Plaintiffs the opportunity to comment on the draft Memorandum of Agreement. See AR 0386-0387. In addition, as reflected in the draft EA, Plaintiffs were involved in public meetings regarding the historic preservation issues. Indeed, the Rhode Island State Historic Preservation Officer held a November 2001 public meeting that was attended by more than 30 members of Plaintiff College Hill Neighborhood Association. See AR 0600-0601. Thereafter, Brown University hosted several meetings or otherwise met with the public on July 31, 2002, October 9, 2002 and May 2003 to update the public on the Project and design changes. See AR 0601-0602. Therefore, the

denial of "consulting party" status was a mere formality and did preclude Plaintiffs from being actively involved in the Section 106 process. Therefore, this Court should conclude that the documents at Tabs 17, 21, 24-26 and 28 do not fall within the first exception to the "record rule."

E. Tabs 24, 28, 43-45 - Predetermination in the Site Selection/Alternatives Analysis

The documents that allegedly demonstrate improper predetermination of the Project site (Tabs 24, 28, 43-45) are also not directly related to the Federal Agencies' decision not to do an EIS or adverse to that decision. Under NEPA, a federal agency must "study, develop, and describe appropriate alternatives to recommended courses of action." 42 U.S.C. § 4332(2)(E). Consistent with this mandate, an EA must include a brief discussion of alternatives as required under Section 102(2)(E) of NEPA. 40 C.F.R. § 1508.9(b); see also 40 C.F.R. § 1500.2(e) (federal agencies must identify and assess reasonable alternatives to proposed actions). Even in the context of an EIS, all that is required is enough information to allow for a reasoned choice of alternatives. Cummington Preservation Committee v. Federal Aviation Administration, 524 F.2d 241 (1st Cir. 1975) (citing Natural Resources Defense Council v. Morton, 458 F.2d 827, 836 (1972)). Plaintiffs do not, and cannot, dispute that the draft and final EA contain an analysis of alternative sites. See AR 0536-0602, 0724-0730. Therefore, the documents proffered by Plaintiffs cannot reasonably be said to be directly related to, or adverse to, the decision of the Federal Agencies not to do an EIS for the Project.[3]

Plaintiffs allege generally that the Federal Agencies misapplied the criteria, or improperly selected criteria, in siting the Project. Plaintiffs' Memorandum at pp. 32, 35 and 45-46. However, even assuming *arguendo* that the documents in dispute establish that the Federal Agencies used the wrong criteria, or even selected criteria to support the ultimate site chosen

[3] Although Plaintiffs challenge the ultimate site selection made by the Federal Agencies, it is for the Court ultimately to decide whether the Federal Agencies' analysis of the alternatives was arbitrary and capricious.

(both of which Brown University disputes), they should not be added to the administrative record because Plaintiffs' arguments are fully contained in the existing record. Indeed, in Plaintiff William Touret's July 1, 2003 comment letter on the draft EA, he dedicated more than two full pages to arguing that the site selection criteria were "contrived." See AR 0915-0918. Therefore, the documents at Tabs 24, 28 and 43 through 45 do not fall within the first exception to the "record rule" and this Court should decline to add them to the record.

F. Tabs 43 and 44 – Predetermination to Deny Plaintiffs' Request to Extend the Comment Period

The documents relating to the alleged predetermination of Defendants to decline Plaintiffs' request to extend the public comment period (Tabs 43 and 44) are also not directly related to and/or adverse to the Federal Agencies' decision not to do an EIS. Even if the documents at issue demonstrate that Defendants were predisposed to deny any requests for extension of the public comment period, they are not directly related to the decision not to do an EIS, and are not adverse to that decision, because Plaintiffs had no legal right to comment on the draft EA, and certainly no legal right to a particular amount of time to comment. As Magistrate Judge Martin noted in his Memorandum and Order Denying Plaintiffs' Motion to Compel Discovery (the "Order"), the CEQ NEPA regulations neither provide for a public comment period nor confer a right on the public to comment on draft EAs except in limited circumstances. See Order at p. 7 (citing 40 C.F.R. §§ 1500-1508, 1506.6). Although the CEQ Regulations expressly provide for public comments for an EIS, they specifically omit conferring a public right to comment on a draft EA. See id. §§ 1500-1508; see also id. §§ 1506.6(f), 1506.10(c). The First Circuit has remarked that "[n]othing in the CEQ regulations requires circulation of a draft EA for public comment, except under certain limited circumstances." Alliance to Protect

Nantucket Sound, Inc. v. United States Dept. of Army, 398 F. 3d 105, 115 (1st Cir. 2005) (citing 40 C.F.R. § 1501.4(e)(2)).[4]

Further, neither the NASA nor the DOE regulations implementing NEPA require a public comment period for a draft EA or otherwise confer on the public a right to comment on a draft EA. See 14 C.F.R. §§ 1216.3, 1216.309; 10 C.F.R. §§ 1021, 1021.301. They permit public comments for an EIS, but specifically omit conferring a public right to comment on a draft EA. See 14 C.F.R. §§ 1216.3, 1216.308(a); 10 C.F.R. §§ 1021, 1021.301, 1021.311, 1021.313. Accordingly, because Plaintiffs never had a right to comment or otherwise participate in the NEPA review process, any limitation on their participation cannot be said to be directly related to, or adverse to, the Federal Agencies' decision not to do an EIS for the Project.

Finally, the documents at Tabs 43 and 44 should not be added to the administrative record because it already contains Plaintiffs' arguments that the public comment period was too short (AR 0920-0921) and the final EA provides a response (AR 0788). Therefore, the documents at Tabs 43 and 44 are merely duplicative.

G. Tab 69 – Frustration of Public Participation

For many of the reasons above, the document at Tab 69 is also not directly related to, or adverse to, the Federal Agencies' decision not to do an EIS for the Project. Plaintiffs allege that Tab 69 is important because the narrative therein (intended for the draft EA) fails to indicate that Brown University allegedly failed to release certain information to the public and/or honor information requests from the public. Plaintiffs' Memorandum at p. 62. As explained in

[4] "Public participation is required by the CEQ regulations if the proposed action is without precedent or is similar to an action that normally requires preparation of an environmental impact statement. 40 C.F.R. § 1501.4(e)(2). In such cases, an agency must make its proposed finding of no significant impact available for public review thirty days before the agency makes its final determination whether to prepare an environmental impact statement." Defenders of Wildlife, Earth Island Institute v. Hogart, 330 F. 3d 1358, 1373 -1374 (Fed. Cir. 2003). Plaintiffs do not allege that any of those circumstances exist in this case.

Section (F) above, Plaintiffs never had a right to comment on the draft EA. As a result, alleged non-disclosure of information to Plaintiffs cannot reasonably be said to be adverse to the Federal Agencies' decision. In any event, Tab 69 is further unrelated to, and not adverse to, the decision not to do an EIS because the administrative record already contains the argument for which Plaintiffs seek to use Tab 69. Plaintiffs' arguments about being denied adequate opportunity to participate in the NEPA review process are set forth in great detail in Plaintiff William Touret's July 1, 2003 comment letter, which is in the record. See AR 0896-0922. Therefore, this Court should decline to add Tab 69 to the administrative record under the first exception to the "record rule."

Based on the foregoing, none of the documents proffered by Plaintiffs falls within the first exception to the "record rule."

## II. PLAINTIFFS HAVE FAILED TO MAKE A STRONG SHOWING OF BAD FAITH TO JUSTIFY SUPPLEMENTING THE ADMINISTRATIVE RECORD UNDER THE SECOND EXCEPTION

Under the second exception to the "record rule," a party may add documents to the administrative record upon a "strong showing of bad faith or improper behavior." Volpe, 401 U.S. at 420; Town of Norfolk, 968 F.2d at 1458-59. It is a fundamental proposition of administrative law that "inquiry into the mental processes of decisionmakers is usually to be avoided." Volpe, 401 U.S. at 420 (citing United States v. Morgan, 313 U.S. 409, 422 (1941)). Therefore, the burden on a party seeking to establish agency bad faith is a heavy one. Linnon, 966 F. Supp. at 114 n.1.

Plaintiffs' speculation regarding Defendants' bad faith is insufficient to meet their heavy burden. First, most of the documents offered by Plaintiffs relate to alleged bad faith on the part of Brown University and/or Battelle, not NASA and/or DOE. See Tabs 1, 2, 3, 4, 7, 8, 9, 29, 30,

33-42, 46, 47, 52-54, 58-63, 65, 66, 69, 70 and 80. Brown University has not located any authority, and Plaintiffs offer none,[5] to support imputing alleged bad faith on the part of Brown University and/or Battelle to the Federal Agencies. On the contrary, the "bad faith" exception to the "record rule" applies to *agency* bad faith. See Volpe, 401 U.S. at 420 (plaintiffs must make a strong showing of bad faith or improper behavior by the administrative decision-makers) (emphasis added). Indeed, since it is the decision of the *agencies* that this Court reviews, it is only their good faith, or absence thereof, that is relevant. Indeed, this Court has already rejected Plaintiffs' invitation to impute any alleged bad faith by Brown University to the Federal Agencies. In the Order, Magistrate Judge Martin stated that "[t]he court is not satisfied that the alleged bad faith on the part of Brown can be charged to the agencies." Order at p. 6 (citing Williams, 391 F. Supp. 2d at 198. Therefore, the documents at Tabs 1-4, 7, 8, 9, 29, 30, 33-42, 46, 47, 52-54, 58-63, 65, 66, 69, 70 and 80 cannot be added to the administrative record under the "bad faith" exception to the record rule.

As detailed more fully below, the documents at Tabs 10-28, 31-32, 43-45, 48-51, 55-57, 64, 67-68, 71-79 and 81-82 also do not establish any bad faith on behalf of the Federal Agencies. Therefore, this Court should find that none of the documents falls within the second exception to the "record rule."

A. Tabs 10-14 – Alternative Sources of Funding

The documents at Tabs 10 through 14 fail to evidence any bad faith within the meaning of the second exception to the "record rule." Plaintiffs allege generally that exclusion of

---

[5] This absence of authority was noted in Brown University's opposition to Plaintiffs' motion to compel, and was addressed at oral argument on the motion to compel. As described below, Magistrate Judge Martin also addressed the issue. Nevertheless, Plaintiffs have never offered authority that supports their position. Plaintiffs cite to the Council on Environmental Quality ("CEQ") regulations, 40 C.F.R. § 1506.5(a) and (b), but these regulations merely require an agency to independently evaluate the information provided by an applicant. See Plaintiffs' Memorandum at p. 7 and n.9.

National Institute of Health ("NIH") from the NEPA process and/or the failure to disclose information relating to NIH funding from the administrative record evidences bad faith. See Plaintiffs' Memorandum at pp. 14-21. However, neither alleged omission rises to the level of bad faith by the Federal Agencies. First, there was no legal obligation to disclose other sources of funding in the draft EA. Whether or not Brown University had other sources of funding for the proposed Life Sciences Building is wholly inapposite to the issue of whether NASA and/or DOE should have done an EIS. Nowhere in the CEQ, NASA and/or DOE regulations does it indicate that non-environmental issues such as other sources of funding are part of the criteria to be used in determining whether an EIS needs to be performed. On the contrary, the CEQ NEPA regulations make clear that the EA is to be focused on "the *environmental* impacts of the proposed action." 40 C.F.R. § 1508.9(b) (emphasis added).

Similarly, there is no evidence in the record, and Plaintiffs offer nothing but speculation, to indicate that the absence of NIH from the NEPA review process was intentional. Plaintiffs offer no controlling legal authority for the proposition that NIH was required to be a party to the NEPA review process. Plaintiffs rely on 40 C.F.R. § 1508.18 for support (Plaintiffs' Memorandum at pp. 14-15), but that section of the CEQ NEPA regulations does no more than define a "major federal action" under NEPA; it does not expressly or impliedly require all federal agencies funding a project to be part of the review process. Similarly, Plaintiffs' reliance on 40 C.F.R. § 1508.25 is misplaced because that provision relates solely to "range of actions, alternatives, and impacts to be considered in an *environmental impact statement.*" 40 C.F.R. § 1508.25 (emphasis added). By its terms, that provision does not apply to environmental assessments.

Moreover, Brown University submits that NIH never expressed any desire or interest in participating in the NEPA review process, and that NASA and/or DOE could not have compelled NIH's participation.[6] It not unreasonable, given the public notice of the draft EA, that NIH could have submitted comments on the draft EA. Moreover, had NIH determined that its funding required NEPA review, NIH could have initiated separate NEPA proceedings. Therefore, there is no basis for Plaintiffs' claim of bad faith, and this Court should decline to supplement the administrative record with the documents at Tabs 10 through 14 under the second exception to the "record rule."

B. Tabs 15-28, 31-32, 43-45 and 48-51 – Predetermination

Plaintiffs have also failed to make the requisite showing of bad faith to justify adding the documents at tabs 15-28, 31-32, 43-45 and 45-81 to the record under the second exception to the "record rule." First, with respect to Plaintiffs' allegations that the Federal Agencies predetermined, in bad faith, that the outcome of the NEPA process would be an EA and FONSI (Tabs 16, 20, 27-28, 31-32, 43-44 and 50-51), for the same reasons detailed in Section I(B) that the documents are not adverse, they also fail to evidence any bad faith. Specifically, the parties' focus on preparing an EA rather than an EIS cannot evidence bad faith because it was consistent with the NEPA regulations. See 40 C.F.R. § 1508.9(a)(1) (defining an EA as a concise document that provides sufficient evidence and analysis to determine whether an EIS or a FONSI should issue); see also Marsh, 769 F.2d at 875. An EA is by its terms a "means for determining whether an EIS is required." Larsen, 692 F. Supp. at 82. Therefore, until an EA is done, there cannot reasonably be any discussion regarding the need for, or scope of, an EIS. Furthermore, if the results of the EA indicate that there would be no significant impact, there would be no need

---

[6] The local Department of Health was given the opportunity to comment and declined, stating that it "has no direct regulatory authority concerning activities addressed in [the EA]." See AR 0708.

for further analysis. Accordingly, the failure of the parties to discuss doing an EIS does not show improper predetermination of result, but rather, compliance with the letter and spirit of NEPA. Indeed, in this case, there is no evidence in the record (or in any of the documents with which Plaintiffs seek to supplement the record) that the Federal Agencies had made any commitment of time or resources that would have prevented the Federal Agencies from making an objective determination as to whether an EIS was required. Therefore, Plaintiffs' proffered documents constitute nothing more than speculation.

Similarly, with respect to Plaintiffs' allegations that the Federal Agencies predetermined, in bad faith, to limit their role in the NEPA review process (Tabs 16, 18-20, 22, 23, 27 and 50-51), for the same reasons detailed in Section I(C) that the documents are not adverse, they also fail to evidence any bad faith. Contrary to Plaintiffs' assertions, NASA and DOE assumed a significant role in the preparation of the draft and final EA, and can scarcely be said to have disregarded their role by failing to review adequately Brown University's and/or Battelle's work. Jantzen, 589 F. Supp. at 119. The existing record is replete with evidence that NASA and DOE were actively and substantively participating in the preparation of the draft and final EA. See AR 0428-0449 (DOE comments on draft EA); AR 0450-0454 (NASA and DOE comments on draft EA); AR 0456-60 (correspondence indicating meeting in Providence with Federal Agencies to discuss draft EA); AR 0516 (DOE comments on draft EA); AR 0517-0529 (pre-issuance correspondence with Federal Agencies regarding substance of draft EA). Plaintiffs' proffered documents cannot overcome this overwhelming evidence that NASA and DOE were very involved in the process. Therefore, the documents fail to support Plaintiffs' allegations of agency bad faith.

Plaintiffs' proffered documents relating the alleged predetermination of the Section 106 process (Tabs 17 and 21) and Plaintiffs' request for "consulting party" status (Tabs 21, 24-26 and 28) are also not sufficient to establish agency bad faith. For the same reasons that the documents are not adverse as detailed in Section I(D), they also do not establish any agency bad faith. In short, even if the Federal Agencies were inclined to conclude the Section 106 review process with a Memorandum of Agreement, Plaintiffs fail to present any evidence in their proffered documents that the process was flawed or otherwise failed to comport with the requirements of law (i.e., that the ultimate decision was fatally flawed).[7] Moreover, with respect to their denial of "consulting party" status, Plaintiffs fail entirely to argue, and there are no regulations that indicate, that Plaintiffs had any legal right to such status. See 36 C.F.R. § 800.2 (c)(1)-(5). Notwithstanding the absence of any such right, Plaintiffs were permitted to participate, and actively participated, in the Section 106 review process. Plaintiffs were actively involved and included in the Section 106 review process. Plaintiffs had the opportunity to comment on the draft memorandum of Agreement. See AR 0386-0387. In addition, as reflected in the draft EA, Plaintiffs were involved in public meetings regarding the historic preservation issues. Indeed, the Rhode Island State Historic Preservation Officer held a November 2001 public meeting that was attended by more than 30 members of Plaintiff College Hill Neighborhood Association. See AR 0600-0601. Thereafter, Brown University hosted several meetings, or otherwise met with the public, on July 31, 2002, October 9, 2002 and May 2003 to update the public on the Project and design changes. See AR 0601-0602. Having permitted and encouraged Plaintiffs' participation in the Section 106 process, the documents proffered by Plaintiffs can hardly be said to establish agency bad faith.

---

[7] Again, it is for this Court at a later date to ultimately determine whether the Federal Agencies' conclusions were arbitrary and capricious.

The documents that Plaintiffs allege demonstrate predetermination and bad faith in the alternatives and site selection analysis are similarly unavailing. For the same reasons that they are not adverse within the meaning of the first exception as detailed in Section I(E) above, they do not show agency bad faith. As detailed above, an EA must only include a brief discussion of alternatives as required under Section 102(2)(E) of NEPA. See 40 C.F.R. § 1508.9(b); see also 40 C.F.R. § 1500.2(e) (federal agencies must identify and assess reasonable alternatives to proposed actions). Plaintiffs do not dispute, and cannot dispute, that the draft and final EA contain an analysis of alternative sites. See AR 0536-0602, 0724-0730. Therefore, the documents proffered by Plaintiffs cannot reasonably be said to show bad faith.

Even assuming arguendo that the documents proffered by Plaintiffs show that the Federal Agencies misapplied the criteria, or improperly selected criteria, in siting the Project, there is no basis for adding those documents to the record under the second exception. Plaintiffs' arguments are fully contained in Plaintiff William Touret's July 1, 2003 comment letter on the draft EA, in which he dedicated more than two full pages to arguing that the site selection criteria were "contrived." See AR 0915-0918. Therefore, the documents should not be added to the record under the "bad faith" exception to the record rule.

Finally, the documents at Tabs 43 and 44 do not evidence any bad faith on behalf of the Federal Agencies. As detailed in Section I(F) above, declining to extend the public comment period on the draft EA cannot reasonably be said to constitute bad faith because Plaintiffs had no legal right to comment on the draft EA in the first instance. In the Order, Magistrate Judge Martin noted that the CEQ NEPA regulations neither provide for a public comment period nor confer a right on the public to comment on a draft EA, except in limited circumstances. See Order at p. 7 (citing 40 C.F.R. §§ 1500-1508, 1506.6). The First Circuit has reached the same

conclusion that the public's right to comment is limited to exceptional circumstances. See Alliance to Protect Nantucket Sound, 398 F. 3d at 115 (citing 40 C.F.R. § 1501.4(e)(2)). Further, neither the NASA nor the DOE regulations implementing NEPA require a public comment period for a draft EA or otherwise confer on the public a right to comment on a draft EA. See 14 C.F.R. §§ 1216.3, 1216.309; 10 C.F.R. §§ 1021, 1021.301. Because Plaintiffs never had a legal right to comment, or otherwise participate in the NEPA review process, any limitation on the time for commenting cannot support a finding of bad faith.

The documents at Tabs 43 and 44 further should not be added to the administrative record under the "bad faith" exception because the record already contains Plaintiffs' arguments that the public comment period was too short (AR 0920-0921) and the final EA provides a response (AR 0788).

C. Tabs 55-57, 64, 67-68 and 71-73 – Frustration of Public Participation

The documents at Tabs 55 through 57 also fail to evidence any bad faith within the meaning of the second exception to the "record rule." Plaintiffs allege generally that these documents support a finding that their public participation in the review process was frustrated. See Plaintiffs' Memorandum at pp. 53-55. However, there is nothing in the documents at issue that supports this assertion. To the contrary, Tabs 55, 56 and 57 indicate that the public was involved in the review process as it relates to a public meeting that was held about the Project on November 28, 2001 pursuant to Section 106 of the NHPA. Therefore, these documents not only fail to support, but undermine, Plaintiffs' allegations of bad faith. As a result, there is no evidence of bad faith within the meaning of the second exception to the "record rule."

Plaintiffs' attempt to argue bad faith through the document at Tab 64 is similarly unavailing. They allege that that this document shows bad faith because it fails to reflect

whether Brown University forwarded Plaintiff William Touret's comments on air and noise emissions to the Federal Agencies. See Plaintiffs' Memorandum at p. 59. In short, Plaintiffs argue that the document constitutes evidence that Brown University did not forward Mr. Touret's comments to the Federal Agencies simply because the document does not say that Brown University did forward the comments. Brown University submits that Plaintiffs' argument is specious. Furthermore, as set forth in detail above, although Plaintiffs had no legal right to comment, they nonetheless were provided such an opportunity and, in fact, submitted voluminous comments relating to air and noise emissions. See AR 0896-1036. Therefore, this document cannot support a finding of bad faith within the meaning of the second exception to the "record rule."

The documents at Tabs 67 and 68 also fail to evidence, let alone establish, any bad faith on behalf of the Federal Agencies. The document at Tab 67 shows no evidence of bad faith by the Federal Agencies; it is merely a letter from Plaintiffs' counsel to the RIHP & HC asking to be placed on a mailing list. As to the document at Tab 68, Plaintiffs attempt to argue that it establishes that Brown University failed, in bad faith, to provide the RIHP & HC the draft February 4, 2002 version of the Submission to the State Historic Preservation Officer. See Plaintiffs' Memorandum at pp. 61-62. However, even if Plaintiffs are correct, there can be no dispute that the February 4, 2002 version of the report was provided to the Federal Agencies and is part of the public record. See AR 0084-0230. Furthermore, Plaintiffs had no legal right to comment on the draft EA, so they cannot reasonably claim to have been prejudiced. Therefore, these documents fail to show any agency bad faith.

Finally, the documents at tabs 71 through 73 also fail to make a showing of bad faith on behalf of the Federal Agencies. Again, these documents relate to alleged limitations on

information that Brown University provided to Plaintiffs (Tab 71), the alleged failure of Brown University to pass along public comments to the Federal Agencies (Tab 71), and the alleged failure to extend the public comment period (Tabs 72 and 73).[8] However, as detailed above, any alleged failure to volunteer information to Plaintiffs and/or extend the public comment period cannot constitute bad faith because Plaintiffs did not even have a right to comment in the first instance. Furthermore, any alleged failure to relay public complaints to the Federal Agencies is inapposite where, as here, Plaintiffs had an opportunity to express, and in fact did express, their concerns through the public comment process. As a result, none of the documents at Tabs 55-57, 64, 67-68 and 71-73 show bad faith.

D. Tabs 74-76 – Additional Impacts

The documents at Tabs 74 through 76 also do not provide any basis for a claim of bad faith on behalf of the Federal Agencies. Plaintiffs claim that these documents show that Brown University had an existing Biosafety Level 3 facility on site (Tabs 74 and 75) and that there was ongoing military-related research at Brown University (Tab 76). Plaintiffs argue, *inter alia*, that the cumulative impacts of these activities were neglected in the draft and final EA report. See Plaintiffs' Memorandum at pp. 66-68. However, even if Plaintiffs' assertions are true, it is nothing more than shear speculation to suggest that the documents show some improper motive on behalf of Brown University, let alone the Federal Agencies.[9] Therefore, the documents at Tabs 74-76 do not fall within the second exception to the "record rule."

---

[8] Plaintiffs allege that Tab 71 shows that the public expressed concern about the incidence of local cancer cases. Plaintiffs have never, at any time, presented so much as an iota of evidence that those cases are causally related to Brown University's existing operations.

[9] Once again, if the failure to address these alleged impacts was arbitrary and capricious, it is for this Court to decide at a later date.

E. Tabs 77-79 and 81-82 – Post-EA Documents

Plaintiffs allege generally that the documents at tabs 77 through 82, all of which post-date the final EA, cast doubt on the conclusions in the final EA with respect to (1) the foreseeability of future sponsored research (Tab 77); (2) the site selected for the Project (Tabs 78-79); (3) the impacts from existing and proposed incinerators at the site (Tab 81); and (4) future funding (Tab 82). Plaintiffs' Memorandum at pp. 68-71. Plaintiffs' attempt to infer, on the basis of these documents, bad faith on the part of the Federal Agencies is an act of rank speculation and should not be entertained. Therefore, none of the documents at tabs 77 through 79 falls within the second exception to the "record rule."

Based on the above, Plaintiffs have failed to make the requisite showing of bad faith sufficient to invoke the second exception to the "record rule."

## III. THE THIRD EXCEPTION TO THE "RECORD RULE" DOES NOT APPLY BECAUSE PLAINTIFFS CANNOT POINT TO ANY PREDICTIONS BY THE FEDERAL AGENCIES THAT WERE LATER CONTRADICTED

The last exception relied upon by Plaintiffs with respect to Tabs 77 through 82 applies to "evidence either confirming or denying agency predictions made in the original decision [that] subsequently becomes available." Linnon, 966 F. Supp. at 114. Plaintiffs argue that the documents at Tabs 77 through 82 fall within this exception. While it is clear that these documents were created after the final EA was issued, Plaintiffs fail entirely to identify any specific "prediction" that NASA and/or DOE made that the documents undermine. For all of the documents, Plaintiffs merely state that each "casts doubt on the validity of the final EA." See Plaintiffs' Memorandum at pp. 68-72. Brown University submits that Plaintiffs' failure to tie a specific prediction in the final EA to contrary information in any of the documents at Tabs 77

through 82 is fatal. Therefore, none of the documents at Tabs 77 through 82 should be added to the record under the third exception to the "record rule."

## CONCLUSION

Based on the foregoing, Defendant Brown University respectfully requests that this Court deny Plaintiffs' Motion to Supplement the Administrative Record.

Respectfully submitted,

JOSEPH AVANZATO (#4774)
KRISTEN W. SHERMAN (#5595)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel. (401) 274-7200
Fax (401) 351-4607

and

BEVERLY E. LEDBETTER, ESQ. (#2208)
General Counsel
Office of the General Counsel
Brown University
110 South Main Street
Providence, RI
Tel: (401) 863-9900
Fax: (401) 863-1199

Attorneys for Defendant Brown University

Dated: December 19, 2005

CERTIFICATE OF SERVICE

I hereby certify that a copy of the within was hand delivered on this 19th day of December, 2005, to J. William Harsch, Esq., 170 Westminster Street, Suite 800, Providence, Rhode Island and Robin Feder, Esq., United States Attorney's Office, District of Rhode Island, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903 and William G. Touret, 11 South Angell Street #264, Providence, Rhode Island 02906.

*363617_1.DOC*