UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WILLIAM G. TOURET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.,<br><br>Defendants. | ) | CIVIL ACTION NO. 04-198T |

**PLAINTIFF WILLIAM G. TOURET'S REPLY**
**TO BROWN'S OPPOSITION TO HIS APPEAL**

Brown's attempts to show that the Final EA represented the required "hard look" at the hazardous air emissions issues (Brown Brief to Touret, at 2-7) are unavailing, for the same reasons that NASA's and DOE's similar arguments fail.[1] Brown's excuses for NASA's and DOE's failure to inspect the existing Brown pathological waste incinerator for dioxin emissions are also without merit. Brown does not dispute the federal Environmental Protection Agency's concern with the extremely dangerous dioxin emissions associated with such incinerators (Touret Main Brief at 15). Rather, Brown argues that an RIDEM regulatory exemption for that incinerator somehow establishes that the emissions from that incinerator do not and will not include dioxins (Brown Brief to Touret, at 7-8). To the contrary, since there is no evidence that the incinerator has ever been tested for present or future dioxin emissions, it was all the more important for NASA and DOE to take the required "hard look" to ensure that the incinerator does not and will not produce such emissions.

1 This reply is addressed to the four briefs in opposition filed by the defendants.

Brown's arguments against plaintiffs' requests for injunctive and declaratory relief are also misplaced, again for the same reasons that NASA's and DOE's arguments lack merit (see Touret Reply to NASA/DOE, at 1-4). Like the arguments by NASA and DOE, Brown's premise mistakenly assumes that the Life Sciences Building project concludes upon the completion of the physical construction of the facility, and ignores its federally-funded operation.

Brown's contentions that plaintiffs' requests for injunctive and declaratory relief should be barred by the equitable doctrine of laches or by reason otherwise of plaintiffs' alleged delay (Brown Brief to Touret at 8, 14-15) are similarly baseless. Brown correctly observes that laches are generally disfavored in cases arising under NEPA (id. at 14, n. 72). Furthermore, as stated above, aside from the fact that the construction of the Life Sciences Building is not yet complete, the *operation* of the Life Sciences Building -- which will over time represent the far more substantial part financially of the "major federal action" here and the basis of the most potentially significant environmental threats to the public's health and safety (hazardous air emission impacts) -- has not yet even begun (see Touret Reply to NASA and DOE, at 2-3).

Also contrary to Brown's assertions (Brown Brief at 8, 11-12, 15-16), this Court can afford meaningful relief on plaintiffs' claims. For example, with respect to the hazardous air emissions that the Life Sciences Building will indisputably generate upon its operation, NEPA compliance would presumably require sophisticated air modeling to determine the outdoor ambient concentrations of the anticipated individual and cumulative hazardous air emissions -- which tests NASA and DOE undeniably failed to perform (see Touret Main Brief, at 10-14). Depending on the results of those tests, changes to the presently-planned hazardous air exhaust methods, possible other changes to the proposed exhaust emission equipment and its configuration, changes to otherwise permissible limits on maximum daily, monthly, or annual

amounts of individual and cumulative emissions, and relocation of other potentially hazardous air emission-producing activities (such as the use of pathological waste incinerator) are just a few of many such presumably feasible alternatives that the results of the required "hard look" at the hazardous air emission issues might require. Analogous relief could be required with respect to the potential noise emission impacts. Similarly, the required "hard look" at and full disclosure of all of the as yet undisclosed activities encompassed by the true scope of the "major federal action" here might similarly require that feasible alternatives to the potentially significant environmental effects of those activities be implemented.

Brown is also wrong in asserting that federal decisionmaking with respect to the Life Sciences Building project has concluded or will conclude upon the completion of the construction of the facility (Brown Brief to Touret, at 14). The federal government committed during the NEPA review period (if not before) to providing millions if not tens of millions of dollars for federal research at the facility *annually.* Accordingly, the federal government -- pursuant to its necessary close control over that research -- could modify the types of research for which it contracts at the Life Sciences Building, or it could move that research funding to other research facilities across the country that have demonstrated that they comply with NEPA.

Brown's contention that the actions complained of are not "capable of repetition and yet evading review" (id. at 9-11) also fails. Defendants deliberately and improperly avoided performing the required "hard look" at, and omitted to disclose, anything near the full extent of the activities and consequential potentially significant environmental impacts that are entailed by full scope of the "major federal action" here (see Touret Reply to NASA and DOE, at 2-4) -- especially insofar as they include the massive post-construction federal funding for the operation of the facility. More importantly, NASA and DOE deliberately and improperly "segmented" this

NEPA review instead of evaluating all of its individual federal components together in one "major federal action" as NEPA requires (see Touret Reply to NASA/DOE, at 2-3). From the fact that Brown purports to offer assurances that those unexamined, inextricably linked components of *this* "major federal action" individually might be the subject of later, separate NEPA reviews (Brown Brief to College Hill Plaintiffs, at 8), it follows that any such individual NEPA reviews with respect to those improperly segmented components would represent repetitive violations of the conduct complained of here -- and would be effectively unreviewable.

Like NASA and DOE, Brown asserts that plaintiffs have not pursued their claims in this litigation diligently (Brown Brief to Touret, at 14-15); the claim is similarly baseless. The delays of which defendants complain are the result of their own misconduct. Brown omits mention of the most important and overarching factor that prevented plaintiffs from seeking declaratory and injunctive relief sooner -- defendants' *deliberate and repeated* failure to take the required "hard look," in good faith, at *all* of the material facts and circumstances, and to disclose them to the public -- as NEPA mandates (see Touret Main Brief, at 6-7). As plaintiffs have shown in their main and reply briefs on this appeal, the evidence is overwhelming that defendants sought deliberately and improperly to circumvent the EIS process.[2] Plaintiffs have been compelled to attempt to obtain entire categories of material facts that defendants improperly omitted from consideration and disclosure in the course of this NEPA review and subsequent action. And Brown omits to mention that it was not until this past August 2005 that Brown finally disclosed the May 13, 2003 Huppert table of itemized hazardous air emissions (AR Supp. Doc. 1; see Touret Main Brief, at 7-10). That adverse information, which defendants plainly were obligated to disclose during the NEPA review, was not formally made a part of the Administrative Record

[2] See Touret Reply to NASA and DOE, at 3, n. 7, concerning the scope of materials upon which the parties may rely on this appeal.

here until February 23, 2006. That itemized table revealed for the first time that defendants had known or should have known that the annual emission quantities of certain of the most hazardous air emissions would be far greater and that the environmental impacts were potentially far more significant than what the Final EA represented (see Touret Main Brief, at 7-10).

**CONCLUSION**

For the reasons stated here and in plaintiffs' main brief on this appeal, the Court should award plaintiffs the relief that they have requested in their main briefs on this appeal, together with such other and further relief that the Court deems appropriate.

Dated: June 2, 2006

William G. Touret/Pro Se
11 South Angell Street #264
Providence, RI 02906-5206
Tel. (800) 345-0080
Fax (401) 831-5329

CERTIFICATE OF SERVICE

I hereby certify that on the 2d day of June, 2006, I caused a copy of the foregoing to be sent by first-class mail to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Box 1913
Brown University
Providence, RI 02912-1913

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

J. William W. Harsch, Esq.
Carolyn A. Mannis, Esq.
170 Westminster Street, Suite 800
Providence, RI 02903

William G. Touret