**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| WILLIAM G. TOURET, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION NO. 04-198T |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFF WILLIAM G. TOURET'S REPLY TO NASA'S AND DOE'S OPPOSITION TO HIS APPEAL**

NASA's and DOE's contention that this action is moot and therefore lacks continuing subject matter jurisdiction (NASA/DOE Brief to Touret at 7-13) is without merit.[1] NASA's and DOE's argument is premised on a deliberately narrow and erroneous characterization of the scope of the "major federal action" here. The federal agency defendants omit from the scope of this "major federal action" the two important categories of additional federal funding that NASA and DOE also deliberately omitted to examine or disclose during this NEPA review: the $2 million of addition construction grant funds for the Life Sciences Building furnished by NIH, and the many millions of dollars *each year* of post-construction funding that the federal government committed to provide for the Life Sciences Building's research activities.[2]

Brown's belated admission on this appeal that NIH awarded Brown a $2 million construction grant proves that the total federal monetary contribution towards the construction portion of the Life Sciences Building project was materially greater than that which the Final EA

---

[1] This reply is addressed to the four briefs in opposition filed by the defendants.

[2] On this appeal, only Brown admits that NIH provided Brown with the $2 million construction grant (see Brown Brief to College Hill Plaintiffs, at 6).

represented.[3] Moreover, the massive post-construction *federal* funding commitments for *research* activities, the receipt of which Brown was unquestionably certain during the NEPA review period and admitted would total approximately $13.4 million in the Life Sciences Building's first year of operation *alone*, establishes that the true scope of the "major federal action" here extends well beyond the construction period and into the operational period.[4] As a result, the "major federal action" here has not concluded, the action is anything but moot, and this Court's subject matter jurisdiction continues.[5]

NASA and DOE continue to ignore NEPA's broad, inclusive definition of what constitutes a "major federal action" (see College Hill Plaintiffs' Main Brief, at 5).[6] In the Final EA, NASA and DOE improperly refused to take the required "hard look" at all of the federal components of the Life Sciences Building project (id.; AR 113 [0732, 0787]). NASA and DOE do not and cannot seriously deny that their narrow characterization of the "major federal action"

---

3 The circumstances surrounding the $2 million NIH construction grant *alone* suggest that NIH's involvement in and control over the Life Sciences Building's operation also will continue well beyond the construction period (see College Hill Plaintiffs' Reply to Brown, at 2-3).

4 Although the precise total of the many millions of dollars that Brown would receive in federal post-construction operational support in any given post-construction year during the Life Sciences Building's useful life may not have been known to the penny prior to the publication of the Final EA, Brown was so certain during the NEPA review period of the magnitude of the future federal research funding for the Life Sciences Building that Brown acquired a second facility, in May 2003, to provide even more capacity to handle the apparent avalanche of federal research monies (College Hill Plaintiffs' Main Brief, at 5, n. 5; AR 123 [0902-0903]; College Hill Plaintiffs' Reply to Brown, at 1-3). In any event, defendants' wrongful failure to take the required "hard look" at or even to disclose the specific details of those plainly certain additional federal funding commitments precludes NASA's and DOE's claims here that the details of those commitments were so speculative as to preclude detailed examination prior to the publication of the Final EA.

5 The fact that NASA and DOE concluded that the Life Sciences Building project was sufficiently "federalized" to require this NEPA review, an EA, and possibly an EIS (AR 76 [0383-0384]), precludes NASA's and DOE's assertion here that the Life Sciences Building project, even without consideration of the NIH construction grant monies, the more massive post-construction *operational* federal funding, and Brown's intention to utilize "indirect cost recovery agreements" to pay for some or all of the remainder of the cost of the Life Sciences Building's construction with those post-construction federal monies (College Hill Plaintiffs' Main Brief, at 6, n. 6), was not sufficiently "federalized" to constitute a "major federal action" (see NASA/DOE Brief to Touret at 11-13).

6 40 CFR § 1508.18 (2003) provides in relevant part that a "major federal action" "includes actions with effects that *may* be major and which are *potentially* subject to Federal control and responsibility. Major reinforces but does not have a meaning independent of significantly ([40 CFR] § 1508.27).... (a) Actions include new and continuing activities, including projects and programs entirely or *partly* financed, assisted, conducted, regulated, or approved by federal agencies...." (Emphasis added.) See also 40 CFR § 1508.25(a) (2003).

here represents a form of segmentation, which violates NEPA (see College Hill Plaintiffs' Main Brief, at 7; NASA/DOE Brief to College Hill Plaintiffs, at 7).

The massive annual post-construction federal *research* support for the Life Sciences Building, which will fund the activities that will be the source of the potentially most harmful known environmental impacts here -- hazardous air emissions -- will necessarily require the federal government to exercise close and continuous control over those activities.[7] By reason of that ongoing federal control, this Court's ability to provide redress for the threatened harm of which plaintiffs complain is beyond dispute.[8] At a minimum, this Court could order that all future such *operational* federal funding support for the Life Science Building be suspended unless and until defendants demonstrated that all such operational aspects of the "major federal action" here have complied with NEPA (see also Plaintiff Touret's Reply to Brown, at 2-3).

In addition, the FONSI acknowledged that the potential environmental impacts from the operation of the Life Sciences Building project were a foreseeable consequence of the NASA and DOE partial funding alone (AR 113 [801]). Thus, even if in fact the entirety of the federal funding for the Life Sciences Building project and the scope of the "major federal action" here

---

7 As far as federal control over the Life Sciences Building project's *construction* is concerned, by electing to accept the millions of dollars of federal construction funds from NASA and DOE (and NIH), Brown subjected the project to compliance with NEPA and all of its requirements (see, e.g., AR 86 [0457-0458]). As a result, Brown could not and did not proceed with the construction of the Life Sciences Building until NASA and DOE issued the Final EA and FONSI and purported to complete this NEPA review (AR 76 [0384]). The fact that Brown might have instead decided to build the Life Sciences Building without the NASA and DOE (and NIH) construction grants is irrelevant, given the fact that Brown in fact elected to accept those federal monies. The new declarations offered by NASA and DOE on this appeal, and the new declaration submitted by Brown, which purport to disclaim any federal control over the design or construction of the Life Sciences Building project, are thus irrelevant. Furthermore, those new declarations appear to have been submitted in violation of the Court's February 23, 2006 and March 27, 2006 orders limiting the extra-record evidence that may be submitted on this appeal and otherwise present inappropriate *post hoc* rationalizations. The Court, on these additional grounds, should accordingly disregard those declarations. NASA and DOE also request that the Court consider their submissions in response to plaintiffs' previous two motions to supplement the Administrative Record (NASA/DOE Brief to Touret, at 1, 10 n. 8, 19). Plaintiffs accordingly request that, to the extent that NASA's and DOE's request is not inconsistent with the Court's aforesaid February 23, 2006 and March 27, 2006 orders, that the Court also consider in support of this appeal plaintiffs' submissions in support of those two previous motions.

were as limited as the Final EA purported to represent, this Court's ability to provide redress for the consequences of the Life Sciences Building's operation would nevertheless similarly preclude NASA's and DOE's mootness argument here.[9]

NASA's and DOE's claim that the Final EA's analysis of the hazardous air emission issues relied on one or more "categorical exclusions" is also without merit. NASA did not and could not have relied on any "categorical exclusion" regulations, because NASA's regulations did not include such exclusions (see NASA/DOE Brief to Touret, at 6, n. 7). Furthermore DOE, which concluded that an EA was required because its categorical exclusions did *not* apply, did *not* rely on its own categorical exclusion regulations (see Touret Main Brief, at 3, n. 3).

NASA's and DOE's assertion that the information contained in the May 13, 2003 Huppert table of itemized hazardous air emission quantities (AR Supp. Doc. 1) was too inaccurate to warrant disclosure in the Final EA (NASA/DOE Brief to Touret, at 18) or the Administrative Record is also meritless (see Touret Main Brief, at 9-10). NASA's and DOE's argument is also self-defeating, because if in fact that emission information were so inaccurate, an EIS would be required on that basis alone (see id.).[10]

The simple and inescapable fact is that NASA and DOE had no idea whatsoever when they issued the Final EA what external concentrations of hazardous air emissions the Life

---

[8] In their reply to the College Hill Plaintiffs' Main Brief (13-19), NASA and DOE present additional arguments in opposition to plaintiffs' requests for declaratory and permanent injunctive relief. Plaintiff Touret respectfully incorporates by reference here the College Hill Plaintiffs' reply to those additional arguments.

[9] Defendants' improper behavior throughout this NEPA review would also appear to provide an additional independent basis for precluding any consideration of possible mootness here. Ogunquit Village Corp. v. Davis, 553 F.2d 243, 246 (1st Cir. 1977) (see Touret Main Brief, at 19). NASA's and DOE's objection to plaintiffs' standing (NASA/DOE Brief to Touret, at 7-9), which appears to be a restatement of their mootness argument, also fails. Standing under NEPA is construed broadly (see Touret Main Brief at 7, n. 6, and the authorities therein cited).

[10] NASA and DOE contend that RIDEM would have performed air modeling as part of its pre-construction permit application review of the Life Sciences Building (NASA/DOE Brief to Touret at 19), but offer no evidence whether RIDEM in fact ever performed such a review or whether defendants have ever provided RIDEM with accurate hazardous air emission information. The air emission information upon which RIDEM relied in making its July 17, 2003 comments (AR 109 [0705-0707]), which was contained in the Draft EA, did not include the Huppert

Sciences Building would create and thereby cause to impact the surrounding human environment -- especially the abutting residential homes that overlook the Life Sciences Building and its hazardous air emission exhausts from atop the steep hill above. Nor, for that matter, did NASA and DOE have any proper basis when they issued the Final EA for minimizing the significance of the potential short- and long-term health and safety impacts that would result.

## CONCLUSION

For the reasons stated here and in plaintiffs' main briefs on this appeal, the Court should award plaintiffs the relief that they have requested in their main briefs, together with such other and further relief that the Court deems appropriate.

Dated: June 2, 2006

William G. Touret/Pro Se
11 South Angell Street #264
Providence, RI 02906-5206
Tel. (800) 345-0080
Fax (401) 831-5329

CERTIFICATE OF SERVICE

I hereby certify that on the 2d day of June, 2006, I caused a copy of the foregoing to be sent by first-class mail to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Box 1913
Brown University
Providence, RI 02912-1913

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

J. William W. Harsch, Esq.
Carolyn A. Mannis, Esq.
170 Westminster Street, Suite 800
Providence, RI 02903

William G. Touret

itemized emission information (AR Supp. Doc. 1), and was therefore inaccurate and misleading for same reasons as was the Final EA's air emission information.