ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILLIAM G. TOURET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.,<br><br>Defendants. | CIVIL ACTION NO. 04-198T |

**COLLEGE HILL PLAINTIFFS' REPLY TO NASA'S AND DOE'S OPPOSITION TO THEIR APPEAL**

NASA and DOE do not deny that the Final EA acknowledged that the *cumulative* noise emissions from the Life Sciences Building and surrounding sources would exceed the limits of the Providence noise ordinance, the *only* measure of potential impact significance to which the Final EA referred.[1] Furthermore, NASA and DOE omit to mention that a portion of the February 2002 Acentech Report that the Final EA did not disclose stated that the Life Sciences Building would produce noise emissions in excess of *75 and 85 decibels* -- plainly intolerable levels for any site that abuts a residential neighborhood -- at two measuring points unless adequate preventative measures were taken (see AR 123 [0909]). There is no indication that any such preventative measures would be or have been taken.[2]

On the issue of NASA's and DOE's failure to review cumulative environmental impacts, NASA and DOE concede that they did not examine the cumulative effects of related past,

---

1 This reply is addressed to the four briefs in opposition filed by the defendants.

2 NASA and DOE have been on notice since the outset as to plaintiffs' claims that this NEPA review was deficient by reason of the noise emission issues (see, e.g., AR 123 [0899-900, 0907-0911]). At least for this reason, the original complaint was not required to plead the claim with more specificity, as NASA and DOE contend

present, and reasonably foreseeable future actions and activities (NASA/DOE Brief to College Hill Plaintiffs, at 5-6). Nor is there any evidence in the Final EA or Administrative Record that NASA and DOE ever even considered taking the required "hard look" at the details of those activities (see College Hill Plaintiffs' Main Brief, at 4-9). NASA and DOE simply assume in conclusory fashion that "the impacts analyzed will not change regardless of the funding source" (NASA/DOE Brief to College Hill Plaintiffs, at 6). That assumption was and is inconsistent with the "hard look" that NEPA requires, given the potentially significant hazardous air emission and noise emission impacts that plaintiffs have already identified and the additional potentially significant impacts resulting from the massive and completely unexamined additional federal post-construction *operational* funding that will support research activities at the Life Sciences Building (see Touret Reply Brief to NASA/DOE, at 2-3) -- and the even more substantial overall annual research funding that Brown will continue to receive generally. It also bears repeating that, for example, in year 2001, at least 11% of Brown's $100 million of annual funded research was defense related (College Hill Plaintiffs' Main Brief at 6-7). Aggravating the potentially significant environmental impacts from such defense-related research activities is the fact that Brown is and would be precluded from disclosing significant defense-related environmental impacts to the extent that such research were classified. The certainty and extraordinary magnitude of such defense-related and other federal research funding encompasses potentially significant short- and long-term impacts sufficiently definite -- especially to those residing in the abutting residential neighborhood -- that "a person of ordinary prudence would be expected to

---

(NASA/DOE Brief to College Hill Plaintiffs, at 2). See also Fed.R.Civ.P. 8. NASA's and DOE's other similar arguments about the original complaint's allegedly insufficient detail fail for the same reason.

consider [them] in making decisions about possible environmental consequences." Sierra Club v. Marsh, 976 F.2d 763, 767 (1st Cir. 1992).[3]

NASA and DOE do not attempt to defend the Final EA's plainly contrived and otherwise insufficient building site criteria directly. Instead, NASA and DOE assert for the first time that no consideration of such site alternatives was necessary, given the supposedly *de minimis* level of federal funding at issue here (see NASA/DOE Brief to College Hill Plaintiffs, at 9). But the federal funding here was and is anything but *de minimis* (Touret Reply Brief to NASA/DOE, at 2-3).[4] NASA's and DOE's new related argument, that NEPA supposedly did not require consideration of feasible alternatives here because Brown had already made the building siting decision (NASA/DOE Brief to College Hill Plaintiffs, at 9-10), also is without basis. If that assertion were accurate, then consideration of feasible alternatives -- perhaps the most fundamental NEPA requirement, see, e.g., 40 CFR § 1502.14 (2003) -- could similarly be avoided in any NEPA review by removing from NEPA consideration any and all decisions relating to possible feasible alternatives. NASA and DOE also omit to state that during the NEPA review period, Brown reduced the height of the then-proposed Life Sciences Building by one floor -- in response to the RIHP&HC's initial refusal to approve the project during in the concurrent federal NHPA § 106 review (Touret Main Brief at 3, fn. 2).

NASA's and DOE's assertion that the public participation process was other than *pro forma* (NASA/DOE Brief to College Hill Plaintiffs, at 10-11) is also untenable. Defendants' repeated and inappropriate withholding and misrepresentation of highly material information concerning the far greater federal funding and control over the Life Sciences Building's

---

[3] NASA's and DOE's suggestion (NASA/DOE Brief to College Hill Plaintiffs, at 6) that the hazardous and potentially hazardous chemicals and other materials involved in "breakthrough" (AR 113 [0723]) federal civil and federal defense-related research are not subject to change over time is on its face without merit.

construction and operation (see Touret Reply to NASA/DOE, at 1-3), and information concerning potentially significant hazardous air emission and other impacts and procedural improprieties (see Touret Main Brief, at 7-17, 19; College Hill Plaintiffs' Main Brief, at 2-17) -- plainly for the purpose of circumventing the required EIS -- was seriously inconsistent with NEPA's public participation, disclosure, and objective good faith requirements.

Similarly unpersuasive is NASA's and DOE's claim that they did in fact consider the need for an EIS from the standpoint of the CEQ "significantly" factors set forth at 40 CFR § 1508.27(a) and (b) (NASA/DOE Brief to College Hill Plaintiffs, at 12). NASA and DOE concede that the Final EA did not explicitly consider the need for an EIS from the perspective of those factors (id.). They omit to mention that on August 29, 2002, *even before they had assigned Brown to prepare the first draft of the Draft EA*, NASA and DOE decided that this NEPA review would end with a FONSI (see College Hill Plaintiffs' Main Brief, at 16).[5] That August 29, 2002 decision is the most reasonable explanation for the Final EA's failure to consider explicitly the need for an EIS from the perspective of the "significantly" factors.

Lastly, NASA and DOE also fail to overcome plaintiffs' strong showing of predetermination and other bad faith misconduct by the three defendants (College Hill Plaintiffs' Main Brief, at 15-17). NASA's and DOE's excuses to the contrary (NASA/DOE Brief to College Hill Plaintiffs, at 13) are meritless and should thus be disregarded.[6]

---

[4] For the same reason, NASA's and DOE's claim that the "no-action" alternative analysis was proper (NASA/DOE Brief to College Hill Plaintiffs, at 10) also lacks merit.

[5] Furthermore and in any event, contrary to NASA's and DOE's claim, there is no evidence that NASA and DOE otherwise took the required "hard look" at those "intensity" and "significantly" factors that highlight the unique hazardous air emission issues here (see College Hill Plaintiffs' Reply Brief to Brown, at 3-5). The Final EA also glossed over and thus avoided plaintiffs' written objections to the Draft EA concerning the obviously broader scope of the "major federal action" here. See 40 CFR § 1508.27(b)(4); Fund for Animals v. Norton, 281 F.Supp.2d 209, 234-235 (D.D.C. 2003); 40 CFR § 1508.27(b)(7); AR 106 [0627-0628], AR 123 [0901-0903]; AR 113 [0732, 0787]).

[6] At page 3, n. 2 of their brief to plaintiff Touret, NASA and DOE misstate the holding in Davis v. Mineta, 302 F.2d 1102, 1112 (10th Cir. 2002). There, the Court held that by reason of the predetermination it had found, it

CONCLUSION

For the reasons stated here and in plaintiffs' main briefs on this appeal, the Court should award plaintiffs the relief that they request in their main briefs, together with such other and further relief that the Court deems appropriate.

Dated: June 2, 2006

J. WILLIAM W. HARSCH/Bar No. 3688
CAROLYN A. MANNIS/Bar No. 4275
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. (401) 454-4466
Fax (401) 351-3914

Attorneys for Plaintiffs Thomas A. Bennett, William G. Black, Antoinette Breed, Allyn Copp, Ronald A. Dwight, Pamela Hext Dwight, G. Dale Dulgarian, as he is Trustee for KSD Trust, Virginia G. Riggs, Yvonne G. Shilling, and College Hill Neighborhood Association

CERTIFICATE OF SERVICE

I hereby certify that on the 2d day of June, 2006, I caused a copy of the foregoing to be sent by first-class mail to the following:

Robin E. Feder, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Beverly E. Ledbetter, Esq.
Vice President and General Counsel
Box 1913
Brown University
Providence, RI 02912-1913

Joseph Avanzato, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

William G. Touret
11 South Angell Street #264
Providence, RI 02906-5206

---

would apply the "arbitrary and capricious" standard with less than normal deference (see Touret Main Brief, at 7). See Touret Reply to NASA and DOE, at 3, n. 7, concerning the scope of materials upon which the parties may rely on this appeal.